**Cora Lee EAST, Plaintiff-Appellant,**

v.

**ROMINE, INCORPORATED,
Defendant-Appellee.**

No. 74–2332.

United States Court of Appeals,
Fifth Circuit.

Sept. 2, 1975.

Fletcher Farrington, Savannah, Ga., for plaintiff-appellant.

Bart E. Shea, Savannah, Ga., for defendant-appellee.

Before CLARK, Associate Justice,* and GOLDBERG and AINSWORTH, Circuit Judges.

GOLDBERG, Circuit Judge:

This Title VII case presents a nigh diurnal problem for the judiciary. Is a refusal to hire an act of sex discrimination or a permissible decision based on the work-related merits of the individual? This question has formed the chorus for many productions in many seasons of the legal opera. The familiar refrain forms the theme for this work too—and the crescendo reverberates: "The antagonist has not shown that his refusal to hire is work-related." This compelling melodic line causes us to commission a new work in the district court—addressed to the same human drama. By whatever appellation—"litigiousness" or "work history"—the appellee's stated reasons for its refusal to hire, adopted by the district court, do not constitute cognizable cause for the refusal.

Plaintiff, Cora Lee East, is a welder who began work in Savannah, Georgia, in World War II. In either June 1967, or May 1968, East first applied for a job with defendant Romine, Inc., a construction business which hired a varying number of welders.[1] The plaintiff spoke to one of the foremen at the plant, though not to Mr. Romine, who did the hiring, but she did not make a formal application. She appears to have been told at the time that women were unqualified for the type of job for which she was applying. On May 31, 1968, she filed a complaint with the Equal Employment Opportunity Commission charging: "I applied for the position of welder, and I was refused employment because I am female." The EEOC initiated an investigation.

On April 24, 1969 East reapplied for a welding job at Romine, and this time she filed a formal application. Once again,

she received no offer from the company. On May 4, 1971 plaintiff received notice from the Commission that it had been unable to work out a voluntary settlement with defendant and that she had a right to bring a civil action within 30 days. The record does not disclose whether the notice came after an EEOC investigation of both the earlier and the latter incidents or merely after the single incident which took place before the complaint was first filed. This suit was filed on May 27, 1971.

The case was tried before the court on July 27 and 31 and August 7, 1972, plaintiff contending that defendant had violated 42 U.S.C. § 2000e et seq., Title VII of the Civil Rights Act of 1964. Some twenty months later, on April 30, 1974, the trial court issued its opinion. The court found that sex discrimination did not motivate the failure to hire East in either 1967 or 1968 because Romine was not hiring welders at the time. The court also found that the failure to hire in 1969 was based on valid reasons in that an investigation by Romine of East's employment background disclosed some unsatisfactory work histories, and that previous complaints that she had made to the EEOC indicated that she was a disputatious—and therefore undesirable—employee.

We believe that the district court should have dismissed any claim based on incidents allegedly occurring in 1967 since plaintiff did not exhaust her administrative remedies in regard to such alleged incidents. We hold that the district court was not clearly erroneous in its finding that no work existed at the time of Ms. East's 1968 application for employment, and therefore we affirm the ruling that no discrimination is evident in that job refusal. We do not believe, however, that the facts which the district court specified in its decision that no discrimination existed in 1969

---

* Of the Supreme Court of the United States (Retired) sitting by designation.

1. The district court did not make a specific finding as to when the first application was made. Because we find, *infra*, that plaintiff cannot prevail on this particular cause in either case it is unnecessary to determine the exact date of first application.

are legally cognizable to support such a holding; therefore, we reverse that aspect of its decision. If plaintiff has properly exhausted her administrative remedies in regard to the 1969 claim, she deserves a new trial.

*I. The Alleged 1967 Incident:* The trial judge found that "the dominant and decisive reason for failure to employ plaintiff in June, 1967 or May, 1968 was not her sex but economic conditions in respect to employment at Romine, Inc."

 The district court should not have held on the merits of any claim generated from an alleged 1967 act of discrimination. A jurisdictional prerequisite to bringing a claim in federal court in Title VII suits is that the complainant first exhaust his administrative remedies. As Judge Gewin said in *Beverly v. Lone Star Lead Construction Co.,* 5 Cir. 1971, 437 F.2d 1136:

> Nonetheless, the EEOC was intended to and does, play an important role in the legislative scheme. Potential litigants are absolutely required to take a step which affords them at least an *opportunity* to reach a more amicable conciliation out of court.

> It seems clear, therefore, that the requirement of resort to the Commission was designed to give. a discriminator opportunity to respond to persuasion rather than coercion, to soft words rather than the big stick of injunction; that the requirement was not designed to serve as a screen to prevent frivolous complaints from reaching the courts.

We do not think the parties should be allowed to bypass this requirement.

It is our interpretation of Title VII that there exists an absolute right in each complainant to bring a civil action in federal court. This right, however, is subject to one important proviso: The complainant must comply with the minimum jurisdictional requirements necessary to allow the opportunity for conciliation to mature. The purpose of the Act would indeed be frustrated if the Commission could be avoided entirely or if a party's right to proceed in federal court could be erased by a quasi-judicial determination of the EEOC.

> We conclude therefore, that the administrative remedies available from the EEOC must be "exhausted" in the traditional sense of the term, as a prerequisite to federal suit. . . .

> To this end, the tenor of the cases has established only two jurisdictional prerequisites to suit in federal court under Title VII: (1) the filing of a complaint with the EEOC and (2) the receipt of the statutory notice of right to sue.

437 F.2d at 1139–40 (footnotes omitted).

In the present case no complaint was filed until May 31, 1968. But the guiding statute at the time, 42 U.S.C. § 2000e–5(d), mandated: "A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred . . . ."[2] The filing here was not until long after any alleged June 1967 act took place.[3]

---

2. In the 1972 amendments to this Act, the period in which to file was extended to 180 days. 42 U.S.C. § 2000e–5(e). This revision has no bearing on the present case; in any case the filing here was not within the 180 day period either.

3. We have recently held that the statutory filing time limit is not jurisdictional but rather in the nature of a statute of limitations and that such a period does not begin to run until the facts that would support a charge of discrimination under Title VII are apparent or should be apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff. *Reeb v. Economic Opportunity Atlanta, Inc.,* 5 Cir. 1975, 516 F.2d 924. In the present case, however, there are no indications that the bases of a charge of discrimination were unknown to the plaintiff until after the alleged discriminatory incident took place. The regular filing deadline is therefore applicable.

In sum, filing with the EEOC is a jurisdictional prerequisite to federal court consideration of a discrimination claim under Title VII, and the filing in the current case was not timely in regard to any alleged June 1967 act. For this reason, any action based on the 1967 claim should have been dismissed.

*II. The Alleged 1968 Incident:* The district court found that in May 1968, as in 1967, economic conditions rather than sex discrimination caused Ms. East not to be hired. Specifically, the court found: "In 1968 it appears that only one welder was employed which commenced on April 6th of that year".

■ This finding is legally sufficient to hold for the defendant on this cause of action. No prima facie case of sex discrimination was established. The criteria which can be used in determining whether a prima facie case of discrimination under Title VII has been established were set out in *McDonnell Douglas Corp. v. Green,* 1973, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668: [4] 1) that the complainant belongs to a group protected by Title VII; 2) that he applied and was qualified for a job for which the employer was seeking applicants; 3) that, despite his qualifications, he was rejected; and 4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.[5]

■ The fourth prong of the *McDonnell Douglas* test indicates the fatal problem in East's 1968 claim—"That, after his rejection, the position remained open", *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824,—for no position was open at the time of East's application and no position "remained" open. Rather, Romine was not doing any hiring at the time East applied and did no more hiring for at least the next six months. While the fact that no one was hired for a position after an applicant has been turned down does not in itself belie a case of discrimination, *Peters v. Jefferson Chemical Co. supra,* 516 F.2d at 450, here there is no indication in the record that the decision not to put anyone on the payroll was a subterfuge for a discriminatory intent.

Thus the East claim of discrimination in 1968 must fail and the district court is affirmed on this cause of action.

*III. The Alleged 1969 Incident:* Ms. East reapplied to Romine, Inc. in April, 1969, this time filing a formal application. The district court made the following findings about that application:

In 1969 Romine, Inc. hired welders on ten occasions. In eight instances such employment was for a month or less. On the other occasions the employment was around twenty months and nine months, respectively. . .

[T]here were valid reasons in April, 1969, for failing to employ Mrs. East even if job opportunities as a welder were open at that time. Meanwhile, Mr. Romine had checked with various past employers [of] Mrs. East and persons from whom she might have sought employment. He found that in some cases there had been disagreements between her and her employers, excessive sick leaves in one instance, and on another occasion, unsatisfactory work as a welder at Metal Equipment Company.

**4.** While *McDonnell Douglas* dealt with a case of racial discrimination, the criteria are just as applicable to sex discrimination, since, under Title VII, such discrimination is fungibly illegal with racial prejudice. This Court has applied these criteria to alleged sex discrimination several times. *See, e. g., Causey v. Ford Motor Co.,* 5 Cir. 1975, 516 F.2d 416; *Peters v. Jefferson Chemical Co.,* 5 Cir. 1975, 516 F.2d 447; *Pond v. Braniff Airways, Inc.,* 5 Cir. 1974, 500 F.2d 161.

**5.** The Supreme Court noted these factors need not be the sole criteria applied: "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802, n. 13, 93 S.Ct. at 1824. *See also Peters v. Jefferson Chemical Co.,* 5 Cir. 1975, 516 F.2d 447 at 450. However, these factors are those which are usually applied and there are no particular facts in the instant case which call for the application of other factors.

Further, . . . there had been some instances in which Mrs. East had made sex discrimination claims against persons with whom she had sought employment as a welder. Of course, resort to one's rights under the Civil Rights Act of 1964 is not a valid ground in itself for refusing employment to an applicant. However, that fact must be taken in connection with all of the other evidence with regard to desirability of employing Mrs. East as a welder. . . .

We do not believe that these latter two findings are sufficient to rebut the prima facie case of sex discrimination which we believe that Ms. East has established. We therefore reverse and remand the case before us on this issue.

*A. Establishment of the Prima Facie Case:* The district court ruled that: "I(f) any pattern of sex discrimination in employment or existence of evidence indicating bias as to hiring female labor created a prima facie case for plaintiff, defendant has overcome such inference or presumption by showing that no discrimination caused or influenced the failure to employ Mrs. East as a welder in 1968 or 1969." The trial court thus did not specify whether it found that plaintiff had not established a prima facie case of discrimination, or, rather, whether it did not have to address the issue because even if one had been established, it was sufficiently rebutted. Because we do not believe that the evidence presented by defendant is legally sufficient to defeat a sex discrimination charge, we must make the legal decision as to whether a prima facie case was made out.

■ Again, the McDonnell Douglas test is the appropriate one to use. Here, however, the facts indicate that a prima facie case has been established.

As a woman, Ms. East is in a group protected by Title VII. She formally applied for a welding job and was at least presumptively qualified on the basis of an application which showed a long history of welding work.[6] Romine, Inc. accepted applications whenever they came in, and Ms. East was not offered a job. Lastly—and the crucial distinction between this claim and that for 1968—Romine hired nine welders within six months after East made her application.

A prima facie case has been established.

■ *B. Standard of Review of Sufficiency of Rebuttal*: Although the trial judge denominated his conclusions that appellant's work history and disputatious character justified the appellee's refusal to hire her as "Findings of Fact", our review of such *ultimate* facts is not guided by the clearly erroneous standard. Rather, it is guided by standards which have recently been luminatingly restated by Judge Bell in *Causey v. Ford Motor Co., supra.*

At the outset, it is important to delineate our standard of review for assessing the correctness of the district court's nondiscrimination findings. Rule 52(a), F.R.Civ.P., lays down the "clearly erroneous" test for appellate review of district court findings of fact. Under this test, a finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" by the district court. *United States v. United States Gypsum Co.,* 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766. *See also Chaney v. City of Galveston,* 5 Cir., 1966, 368 F.2d 774, 776.

There exists, however, a significant distinction for the purpose of applying the clearly erroneous test between findings of subsidiary fact and findings of ultimate fact. *See Galena Oaks Corp. v. Scofield,* 5 Cir., 1954, 218 F.2d 217, 219–20. Finding a subsidi-

---

**6.** East's qualifications to perform the actual tasks of a welder were not seriously challenged by defendant. The Romine shop foreman admitted that on the basis of her work product she would probably have gotten a "top grade".

ary fact involves the determination of an evidentiary or primary fact; finding an ultimate fact, on the other hand, "may involve the very basis on which judgment of fallible evidence is to be made." *Baumgartner v. United States,* 1944, 322 U.S. 665, 671, 64 S.Ct. 1240, 1244, 88 L.Ed. 1525, 1529. Thus, for example, a finding of infringement of a patent is a finding of ultimate fact, *see Industrial Instrument Corp. v. Foxboro Co.,* 5 Cir., 1962, 307 F.2d 783, 786 n. 2; as is a finding that a gain should be treated as capital rather than ordinary for income tax purposes. *See Gamble v. Commissioner,* 5 Cir., 1957, 242 F.2d 586, 590. With respect to ultimate findings of fact, furthermore, we noted in *Industrial Instrument Corp. v. Foxboro Co., supra,* 307 F.2d at 786 n. 2:

> We may reverse free of the clearly erroneous rule where . . . the issue revolves around an ultimate fact question as distinguished from subsidiary fact questions . . . .

*See also Galena Oaks Corp. v. Scofield, supra,* 218 F.2d at 219.

Although discrimination *vel non* is essentially a question of fact it is, at the same time, the ultimate issue for resolution in this case, being expressly proscribed by 42 U.S.C.A. § 2000e–2(a). As such, a finding of discrimination or nondiscrimination is a finding of ultimate fact. *See Hester v. Southern Railway Co.,* 5 Cir., 1974, 497 F.2d 1374, 1381; *United States v. Jacksonville Terminal Co.,* 5 Cir., 1971, 451 F.2d 418, 423–24. In reviewing the district court's findings, therefore, we will proceed to make an independent determination of appellant's allegations of discrimination, though bound by findings of subsidiary fact which are themselves not clearly erroneous. Also, as in *Humphrey v. Southwestern Portland Cement Co.,* 5 Cir., 1974, 488 F.2d 691, 694, we must determine whether there are requisite subsidiary facts to undergird the ultimate facts. It is with this standard in mind that we approach the factors which the trial

judge considered dispositive of the 1969 claim.

■ *C. Unsatisfactory Work History:* The first consideration which the trial judge noted in deciding that a case of discrimination had been rebutted was that plaintiff had had an unsatisfactory work history. We do not believe that the evidence presented at trial established a legally sufficient case in this regard.

■ The evidence in the case went purely to East's prior work record. There was no comparative evidence introduced as to the work histories of the nine men hired in the subsequent six months. But comparative evidence lies at the heart of a rebuttal of a prima facie case of employment discrimination. If someone is hired, and if there is more than one applicant for the position, then the decision as to which person to hire is necessarily a comparative rather than an absolute process. Introducing evidence as to only one person does not explain how some other person was chosen. When a prima facie case of discrimination has been made out, then we cannot *presume* that the answer lies in the other person's judicially cognizable superior credentials. Thus, even before the trial judge decides whether the criteria used to reject an applicant are sufficiently "work-related", he must determine whether—even according to those criteria—the employer validly chose other applicants over the plaintiff. This need for comparative evidence is vital in this field of the law. It is exemplified in the cases in which "objective criteria", such as performance tests and educational attainment, have been used to make employment decisions. In many of these cases the trial judge must decide whether a performance test sufficiently measures the skills necessary for the job. But in no case that we have found has the judge held that merely introducing the raw score of blacks and women on such a test constitutes a sufficient rebuttal to charges of discrimination. The employer must show that those whom he has hired or promoted have done better

on the examination than those who were rejected or denied promotion. *See, e. g., Humphrey v. Southwestern Portland Cement Co.,* 5 Cir. 1974, 488 F.2d 691; *United States v. Georgia Power Co.,* 5 Cir. 1973, 474 F.2d 906, n.5. Similarly, the bare claim that East has a particular work record does not rebuff a prima facie case of discrimination where others have been hired unless it can be shown that each of the others had a better work record. Such comparative evidence has been an important consideration in previous cases. *See, e. g., McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 804, 93 S.Ct. 1817, 36 L.Ed.2d at 679; *Peters v. Jefferson Chemical Co., supra,* 516 F.2d at 451–52; *Causey v. Ford Motor Co., supra,* 516 F.2d at 422–23; *Green v. Bd. of Regents of Texas Tech Univ.,* 5 Cir. 1973, 474 F.2d 594 at 595.

■ The employer cannot use ad hominum facts concerning work product, disputatiousness and sickliness to exculpate himself. Once the alleged discriminatee has made out a prima facie case the employer must come forward with comparable factual data relating to those he hired to support his claim that he was correct in rejecting the proffered application. The law may not require evidentiary absolutism of the facts presented but the law does require that the evidence be addressed to the issue presented. The facts advanced by Romine, Inc. for denying East her welding job lack the viscous agent which would overcoat her prima facie case—comparable data for those hired. The employer cannot merely say that he looked into her

record with other employers unless he also engages in the complementary enterprise of making the same check upon the persons he did hire when those persons were males and the applicant who alleges discrimination is a female.

■ Since evidence of prior working relationships of those hired was not introduced in the present case, the district court's finding cannot stand.[7]

■ The second consideration noted by the district court was that Ms. East had filed two previous EEOC complaints and that her complaints raised the likelihood that she was a litigious person. This consideration, we believe, fails to provide a reason for not hiring the plaintiff. A person cannot be penalized for resorting to the legal procedures that Congress has established in order to right congressionally recognized wrongs. The Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a) says it simply:

> It shall be an unlawful employment practice for an employer to discriminate against any of his . . . applicants for employment . . . because [the applicant] has made a charge . . . under this subchapter.

In *Pettway v. American Cast Iron Pipe Co.,* 5 Cir. 1969, 411 F.2d 998, this Court faced a situation in which some material contained in the complainant's charge to the EEOC was malicious and, the employer contended, the charge itself was false. The employee was discharged.

---

7. A corollary of this proposition is prompted by our review of the record. The defendant's president testified that while he usually tried to find out about a welder's work history before he was hired, he could not recall the last such investigation he had undertaken. The president also testified that he undertook his investigation of Ms. East after she had filed her complaint with the EEOC, and from his testimony it appears as if this investigation was extensive. But, of course, an employer cannot rebut a prima facie case by introducing unappetizing facts about one applicant after an extensive investigation, and merely claim that no incriminating evidence about other applicants is known to him. Comparative evidence must be truly comparative—it cannot stem from incomparable investigations. The evidence called for is a fair picture of the potential employee. If an employer were permitted to justify his hiring policy merely by comparing the results of an extensive investigation to one of a limited investigation, he could easily come up with far more negative incidents in the work history of the more intensively investigated applicant; but no comparison would be possible on this set of facts since the work history of the other party would remain a mystery.

We responded:

> There can be no doubt about the purpose of § 704(a). In unmistakable language it is to protect the employee who utilizes the tools provided by Congress to protect his rights. The Act will be frustrated if the employer may unilaterally determine the truth or falsity of charges and take independent action.
>
> This is particularly required under the machinery set up by Title VII. Unlike so many Governmental structures in administrative law, EEOC is an administrative agency without the power of enforcement. While it can subpoena witnesses, hold hearings, and attempt conciliation, it has no authority to issue orders or compel enforcement. More than that, except for the pattern or practice situation, (§ 707(a), 42 U.S.C.A. § 2000e–6(a)), in which the Attorney General may institute suit and intervention by him by leave of the court on the Attorney General's certification that the case is of general public importance, either on his own or in response to recommendation of EEOC (§ 705(g)(6), 42 U.S.C.A. § 2000e–4(f)(6), Government does not enter the litigation. The suit is between private parties. The burden of enforcement rests on the individual through his suit in Federal District Court. But charges must first have been filed with EEOC. Consequently, the filing of charges and the giving of information by employees is essential to the Commission's administration of Title VII, the carrying out of the congressional policy embodied in the Act and the invocation of the sole sanction of Court compulsion through employee instituted suit.
>
> . . . . .
>
> Since the Employee was discharged because he filed the charge and his request for reconsideration with EEOC, his discharge was a violation of § 704(a) and he must be reinstated and afforded other appropriate relief including appropriate back pay and such further protective orders or injunctions as may be needed.

411 F.2d at 1005, 1007–08.[8]

Romine's case here is far less persuasive than that of the employer in *Pettway*. It fails on two counts. First, the private attorney general theory is as applicable here as in *Pettway*. Second, the plaintiff has not been shown to be as disagreeable as the plaintiff whom we protected in *Pettway*.

■ There was no claim, let alone a finding, that any of East's charges were false. Defendant merely showed that there had been several of them. But the number of filings cannot reflect poorly on the substantiality of any particular filing. Each must be addressed on its own terms; nowhere does the statute suggest to either the EEOC or to the courts that the number of prior complaints may be figured in any particular complaint's calculus. Nor have we found any case in the general jurisprudence which suggests that such a factor may be weighed in the balance. Thus, Ms. East is serving the congressional interest in her private attorney general role as much with her third as with her first complaint.

Secondly, the number of charges cannot be used as evidence of the plaintiff's disputatious character. In *Pettway* we held that the plaintiff could not be discharged even if it is granted that some of the material in his charge was malicious: "We hold that where, disregarding the malicious material contained in a charge . . . the charge otherwise satisfies the liberal requirements of a charge, the charging party is exercising a protected right under the Act. He may not be discharged for such writing." 411 F.2d at 1007. Malicious comments

**8.** Effective in 1972 the power to institute a "pattern or practice" suit was transferred from the Attorney General to the EEOC. 42 U.S.C. § 2000e–6(e). But this transfer in no way mitigates the basic dependence of the governmental machinery as a whole on the private attorney general to initiate actions.

are far more likely to evidence a disputatious character than the filing of suits in good faith. Serial charges indicate nothing more than that plaintiff believed her rights to be infringed on successive occasions. The law will not recognize a defendant's definition of "disputatious" when it reads "willing to petition the government for a redress of grievances."

The statute prevents a bill of attainder against one for asserting one's rights. Title VII would be chilled to a freeze by allowing the icy finger of job discharge or refusal to touch an individual who claims his Title VII rights. The resort to legal rights cannot itself legalize discrimination.

In sum, evidence which merely indicates that the plaintiff has been involved in many prior court actions cannot in itself establish that the plaintiff would be an undesirable employee who will not do what is legally required of her. The ultimate finding of the district court that such evidence can rebut a case of sex discrimination cannot stand.

*IV. Conclusion:* Today, we take the following action with regard to the claims before us:

First, we remand the 1967 claim to the district court to be dismissed since it was untimely filed.

Second, we affirm the district court finding that Ms. East did not make out a prima facie case of sex discrimination based on the 1968 incident.

Third, we reverse the district court finding that Romine, Inc. rebutted any case of sex discrimination which may have been made out on the basis of the 1969 incident. We believe that the prima facie case was made out.

We believe that in the absence of findings as to those hired, the finding that Ms. East had a poor work history was legally insufficient to rebut the prima facie case. We also believe that evidence of the plaintiff's prior litigation could not be used as a basis for refusing to hire her. We therefore remand this third cause of action to the district court. If the EEOC was made aware of the 1969 cause of action in a timely manner,

such that its 1971 notice of a right to sue included that cause also, then the district court should retry the case on the issue of whether Ms. East's qualifications suffered in comparison to those of the applicants who were hired, and then determine whether those qualifications were sufficiently work related so as to justify a decision on those criteria. If the EEOC was not made aware of the 1969 cause of action in a timely manner, and if the extenuating circumstances noted in *Reeb, supra,* are not present, then the district court should dismiss this cause of action also.

Title VII is a vital instrument in the long struggle to establish the right of prospective employees to be hired on the basis of merit and not turned away at the hiring gate by the scourge of racial or sex discrimination. We have moved far from the days when the employer, in his absolute judgment, without any accountability, could hire or fire at will. We have turned the corner in the battle for equality between the races and the sexes, and the Court must not diverge from the direction pointed for us by the Title VII compass.

Affirmed in part, reversed in part and remanded.