635 F.2d 427
 25 Fair Empl.Prac.Cas. 1634,
25 Empl. Prac. Dec. P 31,550
Joy B. DANNER, and on behalf of other persons similarly
situated, Plaintiffs- Appellants,
v.
UNITED STATES CIVIL SERVICE COMMISSION et al., Defendants-Appellees.
 No. 79-3545.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit A
 Jan. 27, 1981.
 Robert L. Danner, Jr., New Orleans, La., for plaintiffs-appellants.
 Elizabeth A. O'Connell, New Orleans, La., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before GOLDBERG, GARZA and TATE, Circuit Judges.
 TATE, Circuit Judge:
 
 
 1
 The plaintiff Joy Danner, a black employee with the New Orleans Passport Agency within the United States Department of State, appeals the district court's dismissal of her action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., based on alleged racial discrimination in promotion practices of that agency. The district court held that the plaintiff had established a prima facie case under McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), but that the defendants had successfully rebutted the case by showing legitimate, non-discriminatory reasons for their failure to promote the plaintiff. Although the excellent and detailed opinions of both magistrate and district court correctly hold that the defendants had successfully rebutted most of the contentions of discriminatory treatment alleged, we remand for an additional finding with regard to a change in procedure in mid-course of the promotion determination, without which finding we are unable to conclude that the defendants met their burden as to proving non-discriminatory motive in such change. In other respects, the judgment is affirmed.
 
 
 2
 On appeal, the plaintiff chiefly urges the following as reversible error: (1) the district court's finding that the defendants showed by a preponderance of the evidence that their decision not to promote the plaintiff was based upon legitimate, non-discriminatory reasons; (2) the district court's failure to find that the plaintiff proved by a preponderance of the evidence that the defendants' articulated reasons for non-promotion were a pretext.
 
 Context Facts
 
 3
 The New Orleans Passport Agency is a federal agency under the jurisdiction of the Department of State whose purpose is to process passport applications and prepare and issue passports. In May of 1973, the plaintiff, Ms. Danner, a black woman, began work for that agency as a GS-4 clerk-typist. In October, 1974, Ms. Danner was promoted within the New Orleans Passport Agency to a GS-5 clerk-typist. Clerk-typists are non-professional personnel who perform typing, clerical work, cashiering, telephone duties, and production work on the passport documents. The New Orleans Passport Agency also employs passport examiners at levels GS-5 through 9 (professional employees), who deal with and interview the public and adjudicate the legal sufficiency of passport applications through the application and interpretation of detailed agency regulations and guidelines.
 
 
 4
 In October, 1975, a vacancy at the passport examiner level GS-5 was announced. As required, Ms. Danner made a timely written request for consideration for one of the available vacancies. Subsequently, agency officials, headquartered in Washington, D.C., determined that the plaintiff possessed the minimum qualifications necessary to be considered as an eligible candidate, and her name was included with the panel listing of eligible applicants totalling twelve in number. Prior to the compilation of the panel listing of eligible candidates,[1] the New Orleans Passport Agency agent-in-charge Hart, and the assistant agent-in-charge Rogers, determined that of the four passport examiner positions vacant, two would be filled by candidates from among the list of twelve sent from headquarters (in-house), and two would be selected from a list of persons who had passed the Professional and Administrative Careers Examination (PACE) provided by the United States Civil Service Commission. The decision to consider PACE eligible candidates to fill the vacancies was within the discretion of the local agency.
 
 
 5
 Ms. Rogers, the assistant agent-in-charge who was responsible for selecting the two in-house employees from the list of twelve, personally interviewed nine of the eligible candidates (three had previously withdrawn their names from consideration). On the basis of these interviews and her consideration of the data contained in their personnel files, she recommended to the agent-in-charge Hart the two candidates she considered most qualified to fill the vacancies. The two candidates recommended by Rogers and approved by Hart were Kathleen Voth (a white female) and James Vitt (a white male). Voth accepted the job offer, but Vitt declined it for personal reasons.
 
 
 6
 Despite the initial decision to fill two of the vacancies from in-house applicants and the fact that, following Vitt's rejection of the employment offer, only one vacancy allocated to in-house applicants remained open, Hart then decided to fill all three as opposed to only two of the remaining vacancies from the list of PACE eligible candidates. Three whites were eventually selected from this source to fill the remaining passport examiner vacancies.
 
 
 7
 On March 12, 1976, the plaintiff filed a complaint with the Department of State in which she alleged she was denied a promotion to one of the passport examiner vacancies because of her race. After 180 days had passed, the Department had still not issued a decision and, therefore, on September 8, 1976, the plaintiff filed this civil action pursuant to 42 U.S.C. § 2000e-16(c)[2] as a class action. Named as defendants were: the New Orleans Passport Agency, the United States Civil Service Commission and its individual commissioners, the United States Department of State, and the Secretary of State.[3] The district court denied Ms. Danner's Motion to Certify the Class, and the action proceeded to trial before a magistrate as an individual suit.
 
 
 8
 The district court upheld the magistrate's Trial Findings and Recommendation in favor of all the defendants as not clearly erroneous, and ordered that judgment be entered in favor of all the defendants and against the plaintiff Ms. Danner.
 
 
 9
 The plaintiff contends, as earlier noted, that the district court erred in finding that the defendant's decision not to promote her was based on non-discriminatory reasons and in failing to find that the articulated reasons were pretextual.
 
 The Standard of Review
 
 10
 In reviewing the district court's determination that the plaintiff failed to prove her allegations of racial discrimination, the reviewing court must make an independent determination of the ultimate fact issue of discrimination, although it is bound by the district court's findings of subsidiary fact which are themselves not clearly erroneous. Causey v. Ford Motor Company, 516 F.2d 416, 421 (5 Cir. 1975). See also Ramirez v. Sloss, 615 F.2d 163, 169 (5th Cir. 1980). In this regard, it must be determined whether there exists the requisite subsidiary facts to support the ultimate factual finding of non-discrimination. East v. Romine, Inc., 518 F.2d 332, 339 (5th Cir. 1975); Humphrey v. Southwestern Portland Cement Company, 488 F.2d 691, 694 (5th Cir. 1974).
 
 The Prima Facie Case
 
 11
 The Title VII plaintiff alleging racial discrimination must carry the initial burden of establishing a prima facie case. This may be done by showing: (1) that she belongs to a racial minority; (2) that she applied and was qualified for a job for which her employer was seeking applicants; (3) that despite her qualifications, she was rejected; and (4) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of her qualifications. McDonnell Douglas Corporation v. Green, supra, 411 U.S. at 802, 92 S.Ct. at 1824. The district court found, and we agree, that the plaintiff met her initial burden of establishing a prima facie case of racial discrimination. Ms. Danner proved that: (1) she was black; (2) she applied for a promotion to one of the vacant passport examiner positions; (3) she was qualified;[4] and (4) she was rejected by her supervisors in favor of eligible candidates who were not members of a racial minority.
 
 
 12
 Legitimate, Non-Discriminatory Reasons or Pretext
 
 
 13
 Once the plaintiff establishes a prima facie case of racial discrimination, the defendant is required to articulate a legitimate, non-discriminatory reason for its promotion decision. McDonnell Douglas Corporation v. Green, supra, 411 U.S. at 802, 93 S.Ct. at 1824; Ray v. Freeman, 626 F.2d 439, 443 (5th Cir. 1980). To satisfy this burden of proof we require the employer to come forward with comparable factual data relating to those he hired instead of the prima facie discriminatee, in order to support his claim that no discriminatory motive caused him to pass over the protected-minority applicant. East v. Romine, Inc., 518 F.2d 332, 339-340 (5th Cir. 1975).
 
 
 14
 With regard to the initial selection of two of the in-house applicants from the nine eligibles (including Ms. Danner), it is sufficient to say that we do not find to be clearly erroneous the determination that those two were better qualified than the plaintiff Danner, so that under East v. Romine, supra, the employer has proved a non-discriminatory purpose in their selection. Likewise, the various other contentions of discriminatory treatment, with the exception of the "second pass over" claim to be noted below, were rejected in findings not clearly erroneous. The excellent opinions of the district judge and the magistrate detail the evidence and the basis for these findings, which are not clearly erroneous and find adequate support in the record.
 
 
 15
 Second "Pass Over"
 
 
 16
 The plaintiffs additionally allege, and re-urge on this appeal, that the defendants have not borne their burden of disproving discriminatory motivate in passing over Ms. Danner a second time when they decided to fill the again-vacant position that resulted from Vitt's rejection of one of the two in-house promotions offered by selecting an applicant from the outside employees on the PACE list instead of offering it, as consistently planned at a time when white in-house applicants were likely to be selected, to an in-house employee.
 
 
 17
 The evidence as to the reason for this decision is sketchy, perhaps because the greater emphasis was on other complaints of discrimination than on this subsidiary point. Nevertheless, the issue before us is whether, on the record under review, the findings of subsidiary fact made by the district court are sufficient to rebut discriminatory motive in promotion of the white outside employee instead of the black in-house applicant, who has (as noted) established a McDonnell Douglas prima facie.
 
 
 18
 The district court found that the defendants again articulated legitimate, non-discriminatory reasons for resorting to the PACE listing rather than to an in-house panel listing: administratively, it was easier to request a PACE listing than to readvertise the vacancy in order that a new panel be compiled; hiring from the PACE listing would allow the Passport Office to terminate a selectee with a minimum of red tape should he or she prove unsatisfactory; new outside employees would be good for office morale.
 
 
 19
 These factors may indeed have been sufficient to justify the initial decision to allocate a given number of the vacancies between in-house candidates and applicants from without the agency. Yet, without further explanation, the prima facie racial motivation (to avoid appointing a black in-house applicant) is not necessarily dispelled by the conclusory explanation of administrative convenience in the abrupt change to fill the "in-house" vacancy, when a successful white applicant withdrew, by appointment of an "outside" white employee. Under East v. Romine, to dispel the prima facie racial discrimination implicit in the circumstances, it was necessary for the employer to come forward with comparable factual data in order to show that the successful "outside" applicant had qualifications better than those of Ms. Danner (the sole complainant of the in-house employees passed over).
 
 
 20
 We of course do not intimate that as yet Ms. Danner has or has not proved discriminatory motive in the second pass-over. We simply hold that, considering the prima facie case of discrimination established by her, we cannot hold that the ultimate fact of discrimination (or not) may be satisfactorily determined by simple acceptance of the subsidiary fact found by the district court that the employer's articulated reason of administrative convenience was by itself sufficient to rebut the prima facie discriminatory intent established by the plaintiff. For instance, it would be difficult to disbelieve discriminatory motive directed against Ms. Danner[5] if the third applicant selected from the "outside" list had qualifications clearly inferior to Ms. Danner's.[6]
 
 
 21
 Although we affirm the district court's rejection of the other claims of discrimination, we must therefore remand to the district court for it to make further findings, and perhaps take further evidence, as to whether the prima facie case of discriminatory motive established by Ms. Danner had been rebutted insofar as she was passed over a second time when the appointing authority reverted to the list of outside employees. Under East v. Romine, the prima facie case may be rebutted by evidence that the third applicant selected from the PACE list of outside employees had better qualifications than did Ms. Danner. 518 F.2d at 339-40.
 
 The Remaining Issues on Appeal
 
 22
 The remaining contentions of errors raised by the plaintiff-appellant concern (1) the denial of class certification and (2) the imposition of transcript costs upon the plaintiff.
 
 
 23
 1. Denial of Class Certification: The plaintiff complains that her motion to certify the class, filed on October 14, 1977, was improperly denied by the district court. On the scheduled hearing date for the motion, November 9, 1977, the plaintiff's counsel failed to appear, and the district court denied the motion without written reasons. Later, in its written reasons in response to the plaintiff's motion to review the magistrate's findings, entered March 23, 1979, the district court determined that the plaintiff was an inadequate class representative.
 
 
 24
 The district court's decision to deny the class action is reviewable only for an abuse of discretion. Shumate & Co., Inc. v. National Association of Security Dealers, Inc., 509 F.2d 147, 155 (5th Cir. 1975), cert. denied, 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97 (1975); Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1123 (5th Cir. 1969). We find no abuse of discretion in the district court's finding that the plaintiff was not an adequate class representative. See Vol. II, p. 518. See also Camper v. Calumet Petrochemicals, Inc., 584 F.2d 70, 72 (5th Cir. 1978).
 
 
 25
 2. Imposition of Transcript Costs: The final issue raised by the plaintiff is the propriety of the district court's order that the plaintiff pay the cost of entering a transcript of the trial before the magistrate for the purpose of the district court's review. The action was tried before a magistrate by consent of the parties. Following the magistrate's submission of his "Trial Findings and Recommendation," the plaintiff filed a motion to review the magistrate's findings. In a memorandum filed March 22, 1979, the district court agreed that it should properly review the portions of the magistrate's report challenged by the plaintiff to determine if they were clearly erroneous. The court then ordered the plaintiff to enter in the record a transcript of the proceedings before the magistrate. This the plaintiff did with objection, and she now pursues her objection on this appeal.
 
 
 26
 Rule 53(e)(1), Fed.R.Civ.Proc., requires the magistrate to file a transcript of the proceedings before him with the district court clerk of court; however, this provision does not imply that the magistrate must pay the costs for doing so. Rather, under 28 U.S.C. § 1920, the district court is granted the authority to tax as costs court reporter fees for all or any part of the stenographic transcript necessarily obtained for use in the case. Court costs are properly allowed to the prevailing party pursuant to Rule 54(d), Fed.R.Civ.Proc. Thus, the district court did not at the time abuse its discretion in taxing the cost of preparing the trial transcript against the plaintiff, against whom the magistrate recommended a decision below. Of course, if the plaintiff ultimately prevails, she may be entitled to recover the costs so advanced.
 
 Conclusion
 
 27
 For the reasons more fully stated above, we AFFIRM most of the findings of the district court and its rejection of all of the claims of the plaintiff except that based upon alleged discrimination when she was for the second time passed over for promotion. With regard to that claim, we REVERSE and we REMAND to the district court for it to take further evidence, if necessary, and to make further findings and to render judgment on the claim, consistent with the views above expressed by us.
 
 
 28
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 [1]
 The district court upheld as not clearly erroneous the magistrate's finding that the defendants had decided, prior to advertising the vacancies, that two of the passport examiner positions would be filled by persons selected from the PACE list. Despite some conflicting evidence on this point, we agree with the district court. That administrative decision since it was made prior to the defendants' knowledge of whether Ms. Danner or any other black in-house would apply for a vacancy and is justified by the benefits to the agency resulting from the "new life" is therefore considered racially neutral under the circumstances reflected by this record
 
 
 [2]
 42 U.S.C. § 2000e-16(c) provides in part:
 ... after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit ... until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.
 
 
 [3]
 The Civil Service Commission was joined initially on the basis that the Professional and Administrative Careers Examination (PACE), which it administers, was discriminatory. Although the district court held that the plaintiff lacked standing to challenge the PACE (an issue not raised on appeal), the Civil Service Commission remained in the suit because the plaintiff also challenged certain hiring regulations as discriminatory. No evidence as to these regulations was presented at trial, however, and thus the issue is not preserved on appeal. The district court, in its memorandum entered October 16, 1979, made reference in a footnote to the propriety of dismissing the Civil Service Commission from the suit on this basis. However, no such order was made, and the Commission remains a named defendant on appeal
 The Department of State was sued in its capacity as the department of the United States Government with jurisdiction over the New Orleans Passport Agency. The Secretary of State was then joined as the head of the Department of State.
 
 
 [4]
 Both the agent-in-charge Hart and the assistant agent-in-charge Rogers admitted the appearance of the plaintiff's name on the panel listing from Washington established that she at least met the minimum qualifications required at the passport examiner position
 
 
 [5]
 This conclusion is buttressed by the evidence in the record which tends to show that, of the remaining candidates on the panel listing (only two of whom were black), Ms. Danner may have been the most qualified. Thus, had the defendants returned to that list to fill the fourth vacancy, they would have had a difficult time justifying their non-selection of Ms. Danner
 
 
 [6]
 The issue is made more clear from the circumstance that the sketchy offhand explanations for the shift to the outside panel, after Vitt rejected one of the in-house appointments, differs as between the two officials who furnished testimony concerning change. Hart, the head of the local agency, ascribed administrative convenience. However, in her affidavit (D-2), Ms. Rogers, his assistant, was at first uncertain of the reason for the change; but later in her affidavit, and also in her deposition, she thought it might have been because the remaining in-house candidates, although qualified, did not have the potential to excel as good examiners. Deposition, pp. 17-18. If indeed the latter was one of the reasons for the change, it is of course all the more necessary to have comparative data on the qualifications of the outside applicants actually accepted
 We emphasize here that the record in general supports an even-handed and non-discriminatory administration of the local passport office in the selection and regulation of its employees, and that we do not intend in deciding the legal issue of whether the prima facie case of discrimination has been repelled to make any adverse comments on the veracity and apparent sincerity of the defendants and their witnesses in explaining what may then have seemed to be an incidental aspect of the selection process.