Patricia A. JACKSON, Plaintiff-Appellee Cross-Appellant,

v.

CITY OF KILLEEN (Killeen Public Library), Defendant-Appellant Cross-Appellee.

No. 80–2114.

United States Court of Appeals, Fifth Circuit. Unit A

Sept. 4, 1981.

Naman, Howell, Smith, Lee & Muldrow, P.C., Jerry P. Campbell, Waco, Tex., for defendant-appellant cross-appellee.

Kenneth M. Hoyt, Houston, Tex., for plaintiff-appellee cross-appellant.

Before WISDOM, GEE and POLITZ, Circuit Judges.

GEE, Circuit Judge:

This appeal concerns a case of alleged employment discrimination brought under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981.

Patricia Jackson, a black female with a bachelor's degree in library science and two years of library experience in a junior high school, was hired by the Killeen Public Library in February 1975. While she was assigned initially to the circulation desk as a clerk, it was understood that she would perform a variety of tasks. Problems arose with respect to her employment almost immediately. On March 31, the other library employees had a meeting with Mrs. Hinkel, the head librarian, to discuss their dissatisfaction with Mrs. Jackson. Shortly thereafter, Mrs. Hinkel told Mrs. Jackson that she was being discharged due to her apparent dissatisfaction with her work assignments, failure to follow orders, and the dissatisfaction of other employees. After some discussion, however, Mrs. Jackson was

given two weeks to improve her performance.

During this two-week probation period, Mrs. Jackson contacted the NAACP, expressing a variety of complaints. That organization sent a representative, Mr. Nesbit, to the library to investigate the situation. Mr. Nesbit was apparently told that Mrs. Jackson had been doing a fine job; he concluded that personality conflicts were present in the library but that there was no sign of racial discrimination. Mrs. Jackson continued working at the library for some three additional months, during which dissatisfaction with her work grew. In early July she was notified that she was being discharged effective two weeks from the date of the letter. While the termination listed as grounds "(a) incompatibility, (b) questioning of assignments, and (c) lack of amenability of counseling," the testimony at trial was that she was fired for a number of deficiencies, both specific and general. Mrs. Jackson filed a complaint with the Equal Employment Opportunity Commission (EEOC), received a right to sue letter, and filed suit. The trial judge, in extremely general findings of fact and conclusions of law, found that Mrs. Jackson had made a prima facie case that the city failed to rebut and that the reasons given by the city for firing her were a pretext for discrimination. The judgment ordered Mrs. Jackson reinstated and awarded her $1,389 in back pay and $1,500 in attorneys' fees. The city appeals from this judgment, while Mrs. Jackson appeals from the specific award of back pay and attorneys' fees. Throughout this opinion the city will be referred to as defendant, and Mrs. Jackson will be referred to as the plaintiff.

Because we find that the defendant articulated legitimate reasons for the discharge that the plaintiff failed to demonstrate were merely pretextual, we reverse.

■ *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), established the basic allocation of burdens and order of presentation of proof in Title VII cases alleging discriminatory treatment.[1] First, the plaintiff has the burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. The prima facie case "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 101 S.Ct. at 1094. Second, if the plaintiff successfully proves the prima facie case, the evidentiary burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Third, should the defendant carry this burden, the plaintiff must then establish by a preponderance of the evidence that the reasons offered by the defendant were a mere pretext for discrimination. This is merely a division of intermediate evidentiary burdens. "The ultimate burden of persuading the trier of fact that a defendant intentionally discriminated against the plaintiff remains at all time [sic] with the plaintiff." *Burdine*, 101 S.Ct. at 1093.

■ The formulation for the establishment of a prima facie case, set forth in *McDonnell Douglas*, has been applied to discharge cases in this circuit since *Marks v. Pratt Co.*, 607 F.2d 1153, 1155 (5th Cir.1979). Essentially, plaintiffs must show that they are members of a protected class who, while qualified for their jobs, were discharged and replaced with nonminorities. *Cf. Thompson v. Leland Police Department*, 633 F.2d 1111, 1114 (5th Cir.1980) (as part of his prima facie case, plaintiff must establish a negative—that the discharge was not for a valid reason). The trial court below properly found that the plaintiff had established a prima facie case of discriminatory discharge. As the Supreme Court recently pointed out in *Burdine*, 101 S.Ct. at 1094,

---

**1.** The fact that this suit was also brought under 42 U.S.C. § 1981 does not affect our discussion. The elements of proof under § 1981 are identical to those under § 706 of Title VII when these sections are used as here, as parallel bases for relief. *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir.1981).

"the burden of establishing a prima facie case of disparate treatment is not onerous." All that the plaintiff need do is prove by a preponderance of the evidence that he was discharged from a position for which he was qualified "under circumstances which give rise to an inference of unlawful discrimination." *Id.* Although defendant argues that plaintiff failed to prove that she was replaced by a nonminority, the plaintiff testified at trial to this effect,[2] and this is sufficient to cast on the defendant the burden of producing admissible evidence that would allow "the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* at 1096.[3]

The trial court, however, no doubt misled by our misdirection in *Burdine v. Texas Department of Community Affairs,* 608 F.2d 563 (5th Cir.1979), and without the benefit of the Supreme Court's guidance in *Burdine,* 101 S.Ct. 1083, erred when it found that the reasons given by the defendant for the termination of employment were insufficient to refute the prima facie case established by the plaintiff. As elucidated in *Burdine, id.* at 1093–95, the burden cast on an employer after the establishment of a prima facie case is one of production only, not of persuasion.

The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted . . . .

*Id.* at 1094–95 (citation and footnotes omitted). The employer need not disprove the plaintiff's allegation of discriminatory motive by a preponderance of the evidence; *articulation* of legitimate reasons for its employment decision is enough.[4]

In reviewing a district court's determination that the plaintiff proved her allegations of racial discrimination, the reviewing court must make an independent determination of the ultimate fact issue of discrimination, although it is bound by the district court's findings of subsidiary fact that are not themselves clearly erroneous. *Danner v. United States Civil Service Commission,* 635 F.2d 427 at 430 (5th Cir.1981). This case does not present us with the difficult task of distinguishing subsidiary from ultimate factfindings, as the trial judge

---

2. Q . . . . Do you know of any Caucasian who was promoted to supervisor, a supervisory position and that supervisor's position was denied you at the same time?
   A Well, I can say I know when I was taken away from the children's library and in July I got the letter, July 9th, this girl that was given the position, she was not qualified for that position.
   Q All right. That was after your termination, correct?
   A No—well, no. I think maybe a couple of days before Mrs. Hinkel said: "You think you can do so good. Christine can do just as good as you." She was—she said something about—anyway, she was saying that I am nobody, it didn't matter what I was or anything. She said "She can do just as good as you. You don't have to work in a children's"—
   Q My question, Mrs. Jackson: Do you know of any Caucasian that was promot-

ed over you to a job that you were qualified for?
   A Yes.
   Q That was Christine Hegland?
   A Yes.
   Q And she was promoted, like you say, to Assistant Children's Librarian?
   A Yes.
   Q Is that what you are saying?
   A Yes.

3. But proof that after discharge the employer filled the vacant position with a nonminority is not necessary in *all* cases of alleged discriminatory discharge. *See, e. g., McCuen v. Home Insurance Co.,* 633 F.2d 1150 (5th Cir.1980).

4. As we pointed out on remand in *Burdine,* 647 F.2d 513 at 514 (5th Cir.1981), this circuit's authorities, such as *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251 (5th Cir.1977), must of course yield to the extent that they are contrary.

here made only very general, purely conclusory findings.[5] Since there appear to be no relevant subsidiary factfindings at all, we must make an independent determination of the ultimate fact issue of discrimination. Although mindful of the admonition of Rule 52, Federal Rules of Civil Procedure, that "due regard should be given to the opportunity of the trial court to judge . . . the credibility of witnesses," we find on review of the record, that the defendant presented strong evidence that plaintiff was legitimately discharged on grounds of incompetence. We conclude that the trial court's ultimate finding that defendant's reasons for the discharge were a pretext for discrimination is not supported by the evidence.

Plaintiff proved only that she is a member of a protected class, that in her own estimation she did her job well, and that she was discharged. As evidence of competency on the job, plaintiff offered proof of a bachelor's degree in library science, two years' experience in a school library, and her own testimony that she was qualified. No other witnesses, with the exception of Mr. Nesbit from the NAACP, who testified that sometime prior to dismissal he had been *told* that the plaintiff was doing a good job, corroborated her belief. On the other hand, three witnesses—plaintiff's job supervisor, Mrs. Hinkel, and two of her fellow employees—testified that plaintiff was unable to type, file, shelve, or alphabetize accurately, that she expressed dislike for her work assignments, that other employees had to redo her work, and that she appeared to be untrainable.[6] Defendant, by means of the testimony of other library

---

5. 

FINDINGS OF FACT AND CONCLUSIONS OF LAW

FINDINGS OF FACT

Plaintiff is a member of a class protected by Title VII of the Civil Rights Act of 1964, as amended.

Plaintiff was discharged from her employment with the City of Killeen Public Library.

Plaintiff was qualified for the job from which she was discharged.

After Plaintiff's discharge her employer filled her position with a person outside a class protected by the Civil Rights Act of 1964, as amended.

The reasons given by Defendant for the termination of Plaintiff's employment are insufficient to refute the prima facie case established by Plaintiff.

Plaintiff could have by the exercise of reasonable diligence secured employment producing at least the same salary she would have made had she been retained by Defendant, and such employment could have been *obtained within three (3) months* after Plaintiff's termination.

Had Plaintiff not been terminated by Defendant she would have earned $1389.00 for a three-month period of time commencing on the date of her termination.

It was necessary that Plaintiff retain the services of her attorney to prosecute this case on her behalf.

Based upon the considerations announced in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), a reasonable attorney's fee for Plaintiff's attorney is $1,500.00.

CONCLUSIONS OF LAW

Plaintiff has established a prima facie case of discrimination, which Defendant has failed to rebut.

The reasons which the Defendant, principally through the testimony of the witness Hinkel and certain exhibits, have given for Plaintiff's termination are a pretext for discrimination. Therefore, Plaintiff is entitled to an order of this Court reinstating her to her former position, together with an award of back pay for three (3) months in the sum of $1,389.00 and Judgment for $1,500.00 in *attorney's fees.*

6. Janice Sprott, a former employee of the library who supervised plaintiff's work, testified that of all the employees whose work she had supervised, plaintiff's skills were the poorest. The rest of her testimony amply supports defendant's *nondiscriminatory* rationale for discharge:

Q  What sort of problems did you have or what sort of deficiency did Mrs. Jackson's work produce?

A  The main problem that I had was with alphabetizing and filing.

. . . .

Q  Do you know of your own personal knowledge whether Mrs. Jackson's work was up to standard or below standard?

A  Her work was not up to standard as to what we expected there in the library, what I was asked to perform and other employees were asked to perform, no, sir.

. . . .

Q  Was she treated any harsher or worse than anybody else?

A  No, sir, no, sir.

. . . .

Q  Did you all make any special efforts to help Mrs. Jackson fit in?

personnel, successfully rebutted plaintiff's prima facie case by showing that plaintiff's skills in areas vital to her library work were substandard. The defendant's articulation of this legitimate, nondiscriminatory reason for plaintiff's discharge was buttressed by the total absence in this case of any suggestion of disparate treatment. In fact, the evidence presented largely contradicted plaintiff's allegations of discriminatory animus. *See, e. g.,* n. 6, *supra.* Even the plaintiff had stated in a deposition of August 1978 that she did not feel that she had been discriminated against on a racial basis during her employment and that any problems she experienced with her coworkers were due to her "new" status and not to race. Although plaintiff eventually called the NAACP to mediate, the mediator found no indication of racial discrimination. Moreover, the plaintiff's complaints about being more closely watched than other employees, even if true, do not prove disparate treatment. Defendant presented evidence that probationary employees generally were more closely observed, and plaintiff was the only probationary employee working at the library at all relevant times. Although plaintiff testified that she was treated harshly by her supervisor, Mrs. Hinkel, she did not refute defendant's evidence that the supervisor treated *all* employees equally harshly. It scarce need be said that Title VII is not a shield against harsh treatment at the workplace; it protects only in instances of harshness disparately distributed. The essence of the action is, of course, discrimination.

Plaintiff failed to show that the defendant's reasons for her discharge were pretextual, *i. e.,* that her race was a "but for" cause or determining factor for her discharge. *Compare McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 282, 96 S.Ct. 2574, 2579, 49 L.Ed.2d 493, 502 (1976). As we have seen, plaintiff called no witnesses to rebut the very damaging testimony presented concerning her competence. Instead, plaintiff testified on her own behalf as to her library skills. Evidence of paper credentials, while sufficient to prove discrimination in hiring, does not demonstrate competence once hired. Once an employee's skill on the job is successfully challenged by an employer, the employee needs to be able to show more than the undeniable fact that she was initially qualified to be hired. Plaintiff here attempted to rebut the defendant's articulated reasons for discharge by merely restating the meager evidence used to establish her prima facie case. She did not thereby show "that the employer's proffered explanation is unworthy of credence." *Burdine,* 101 S.Ct. at 1095.[7]

Since we reverse the district court's decision that the plaintiff's discharge was due

---

A  Yes, sir.
Q  What were those?
A  The main thing was she was transferred from place to place in the library to do different tasks to find a place where she fitted for the best place.
Q  Did she ever fit in at any of those places?
A  No, sir, she didn't.
. . . .
THE COURT: Mrs. Sprott, you say Mrs. Jackson is not trained and that part of the problem is alphabetizing. Are you telling me that Mrs. Jackson cannot alphabetize?
A  I don't know if she cannot or just won't. I can't say that she cannot. I just am saying that she did not in the vertical file.
. . . .

Mrs. Sprott's testimony was, on our review of the record, not undermined in any way on cross examination. Her testimony, as well as that of Mrs. Hinkel, also effectively countered plaintiff's argument that because she was given a raise and a significant job title change (from clerk to "assistant children's librarian") just prior to her discharge, she must have been doing a competent job. It appears, on the contrary, that plaintiff's change in job status and concomitant pay hike, rather than a sign of competence, was ironically a tribute to her employer's attempts to find a niche for an employee who did not seem to fit in elsewhere.

7. Even assuming that the testimony of a plaintiff, obviously an interested witness, may in a special instance carry the plaintiff's ultimate burden of proof in a Title VII case, this is not such a case. Plaintiff's testimony here was riddled with inconsistencies. To name just one: although plaintiff claimed that her termination in July came as a complete shock to her, as she had not been told that her work was unsatisfactory, this was contradicted by her own testimony that constant reprimands at work resulted in "mental anguish" meriting an award of punitive damages.

to racial discrimination, obviously the award for back pay and for attorneys' fees cannot stand.

REVERSED.