589

Manuel LERMA, Plaintiff-Appellant,

v.

William F. BOLGER, Postmaster General, United States Postal Service, Washington, D.C., Defendant-Appellee.

No. 82–2002

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 18, 1982.

---

Luis M. Segura, Shelby W. Hollin, San Antonio, Tex., for plaintiff-appellant.

M. Angela Flores, Asst. U.S. Atty., Houston, Tex., Thomas H. Pigford, Reg. Labor Counsel, U.S. Postal Service, Memphis, Tenn., for defendant-appellee.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The appellant, Manuel Lerma, a Mexican-American, brought suit against the United States Postal Service under 42 U.S.C. § 1981 and § 1983, and under 42 U.S.C. § 2000e–16(c), alleging violation of § 717(c) of Title VII of the 1964 Civil Rights Act when a white male was hired instead of him. The District Court, Southern District of Texas, Kazen, J., dismissed all jurisdictional grounds except 42 U.S.C. § 2000e–16(c), pursuant to which he found for the Postal Service and dismissed the complaint. The appellant brings this appeal pursuant to 28 U.S.C. § 1291. We affirm the District Court's dismissal.

Following the retirement of one of the custodians in the Harlingen, Texas, Post Office, prospective applicants were sought in order to establish a register of eligibles. The position was advertised and fourteen applicants applied, including Lerma, who applied in September 1976.

The applications received in response to the advertisement were sent to the National Test Administration Center in Los Angeles, California, for rating under applicable regulations. This rating was based on previous work experience and other considerations. Having been rated, the applicants were listed on a hiring worksheet in the order of their rating, with acceptable ratings ranging from 70 to 110 points.[1] The order of the register was Howard Jordan (99); Winniberto Rodriguez (95); Lerma (95); and Ricky Schwab (94).[2]

Postmaster Gilbert arranged interviews with the applicants. Pursuant to the "rule-of-three," Gilbert was required to interview at least three applicants. Because the list of eligibles was new, however, Postmaster Gilbert decided to interview the top four applicants, believing that this would ensure interviews with at least three. In late September 1976, letters were sent to the four highest-rated applicants, Jordan, Rodriguez, Lerma and Schwab, inviting them to arrange an interview.[3] Jordan and Schwab are white; as stated, Rodriguez and Lerma are Mexican-American.

The four applicants responded to the request for an interview. Postmaster Gilbert did not remember Rodriguez responding. Rodriguez testified, however, that he had responded but that he had not set up an interview. He spoke to Gilbert's secretary and informed her that he no longer wished to be considered for the job.

---

1. The rating comprises two scores: the test score as determined by the National Test Administration Center, plus a veterans preference score if applicable. Disabled veterans have a ten-point preference added to the basic score. Nondisabled veterans receive a five-point preference.

2. On the rating sheet, Rodriguez, also a Mexican-American, was listed second and Lerma was listed third. According to the applicable regulations, when two or more eligibles receive the same rating, the tie is broken alphabetically. Lerma's name, therefore, should have been listed second on the worksheet. The sheet was prepared by Mary Butler, secretary to the Postmaster, Mr. Gilbert. Ms. Butler stated that she was not aware of that particular regulation, and Mr. Gilbert also was unaware of that regulation.

3. The personnel regulations for the Post Office provide under § 264.8 that eligible applicants be sent a Form 2550, "Call-In Notice." Postmaster Gilbert used personal letters instead of this form. At trial, he was not sure why he had done this, speculating that his office did not have a supply of the forms at the time.

Following the interviews with Jordan, Lerma and Schwab, Gilbert informed them that no hiring would take place at that time but that the applicant ultimately chosen would be notified at a later date.

The custodial position remained open some 7 months until March before being filled.[4]

In March 1977 Postmaster Gilbert filled the custodial vacancy with Schwab, a white male. Schwab's rating on the list of eligibles was 94, 1 point less than Lerma's rating of 95.[5] Schwab had been employed in the Post Office at Harlingen, Texas, as a "casual distribution clerk" during the fall and early winter of 1976. His father had been a long-time employee in the Post Office but was not a personal friend of Postmaster Gilbert.

Gilbert had spoken with Charlie Krause, the Superintendent of Postal Operations in Harlingen. Krause informed Gilbert that Schwab was a good employee and a "known factor." By Gilbert's own admission, Schwab's performance as a temporary employee "did have some impact on my decision to appoint him since I knew the quality of his work."

Shortly after the decision was made, Lerma received a letter from the Postmaster's office informing him that he had not been selected. The letter did not state the reasons why Lerma had not been selected.

The only issue before the District Court and before this court on review is whether the plaintiff met his burden of proving that Postmaster Gilbert illegally discriminated against him on the basis of race or national origin.

Under the Supreme Court's decisions in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the order of presentation of proof in Title VII cases is set forth.

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." [*McDonnell, supra*], at 802, 93 S.Ct. at 1824. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.,* at 804, 93 S.Ct. at 1825.

*Burdine, supra,* at 252, 101 S.Ct. at 1093.

The initial question, under *Burdine* and *McDonnell Douglas,* then, is whether the District Court was correct in its determination that the plaintiff had established a prima facie case of discrimination.

In an oft-quoted discussion of an appropriate model for establishing a prima facie case of racial discrimination, *McDonnell Douglas* set forth four predicates which the plaintiff must prove:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualification, he was rejected; and (iv) that, after

---

**4.** Postmaster Gilbert stated that the delay was the result of a hiring freeze. Testimony offered by the plaintiff, however, refuted such a freeze. The district court found that, in fact, there was no such freeze in effect, primarily because there was no reference to any such freeze in written document. It is possible, however, that Gilbert was aware of the nationwide postal hiring freeze in effect during part of the relevant time-period. *See Cross v. United States Postal Service,* 639 F.2d 409, 412 n. 4 (8th Cir. 1981).

It should be noted that Jordan, who was on the "clerk carrier" register as well as the custodian register, was hired by the Post Office as a clerk carrier on the same day that Schwab was hired as a custodian.

**5.** Lerma received a ten-point bonus as a disabled veteran. Schwab received a five-point bonus as a nondisabled veteran.

his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824. Lerma met the first three of these requirements. Although he did not fall literally within the fourth requirement, we do find that he established a prima facie case in that he was equally qualified as the person chosen, who was not a minority.[6]

Lerma having met his initial burden, the presentation of evidence moved to the second phase, which requires that the defendant clearly set forth a legally sufficient explanation for the rejection of the applicant. *Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094.

Postmaster Gilbert's reasons for hiring Schwab were that Schwab had previously worked for the Harlingen Post Office, had been a good employee, and was a "known factor."

Under this Court's decision in *Robbins v. White-Wilson Medical Clinic, Inc.,* 660 F.2d 1064 (5th Cir. 1981), the "proffered reason" required by *Burdine* must be viewed "in the context of the evidence in the plaintiff's prima facie case." *Id.,* at 1067. Viewed in this manner, we find that the defendant's stated reasons for hiring Schwab instead of Lerma do offer a sufficient rebuttal to require the plaintiff to move forward with his proof. Schwab was qualified for the position based on the neutral, standardized criteria used by the Post Office. And although there was an element of subjectivity involved in Postmaster Gilbert's decision, it was based on Schwab's record as an employee with the Post Office. We have previously upheld such subjective evaluations based upon work experience where made in good faith. *Jenkins v. Caddo-Bossier Association for Retarded Children,* 570 F.2d 1227 (5th Cir. 1978).

Thus, because Postmaster Gilbert did present a question of fact concerning his decision to hire Schwab, the plaintiff was required to demonstrate that the proffered reason was pretextual.

The plaintiff attempted to do this by showing the entire course of events surrounding Gilbert's decision. Lerma would have us infer discriminatory intent from Postmaster Gilbert's request for four interviews instead of three, from the arrangement of interviews with personal letters rather than prescribed forms, from the placement of Rodriguez on the register ahead of him, from the failure to fill the vacancy for 7 months, and from other such failures to "follow the book." The totality of these circumstances is not persuasive. It is certainly plausible for the fact-finder to view such facts as more indicative of a bureaucratically haphazard, rather than malevolent, office. If the plaintiff had shown that the hiring process produced disparate results, this might be a different case.[7] Plaintiff made no such showing, however, and the District Court found no intent to discriminate. "Treating issues of intent as factual matters for the trier of fact is commonplace." *Pullman-Standard v. Swint,* —— U.S. ——, ——, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66 (1982). Following the reasoning in *Pullman-Standard v. Swint,* we cannot find that the District Court was clearly erroneous in its determination that the plaintiff failed to prove that the defendant's proffered reason was pretextual.

For this reason, the decision of the District Court is

AFFIRMED.

---

**6.** As discussed in *Burdine,* establishment of a prima facie case is not an onerous burden. It serves two important purposes. First, "it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." Second, it assists the parties and the court to narrow the issues and move forward with the case. *Burdine* does stress that, although the burden shifts to the defendant upon establishment of the plaintiff's prima facie case, "the ultimate burden . . . remains at all times with the plaintiff." 450 U.S. at 253, 101 S.Ct. at 1093 -94.

**7.** Surprisingly little evidence was produced at trial in regard to overall employment statistics. The government introduced E.E.O. progress reports giving a breakdown of the Harlingen Post Office workforce, and Postmaster Gilbert testified that he had hired 40 Mexican-Americans.