**Clarence CHALINE, Jr.,**
**Plaintiff-Appellee,**

v.

**KCOH, INC. and Michael P. Petrizzo,**
**Defendants-Appellants.**

No. 81–2269.

United States Court of Appeals,
Fifth Circuit.

Dec. 13, 1982.

Mark T. McDonald, Houston, Tex., for defendants-appellants.

Clark & Hinojosa, James R. Clark, Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, WILLIAMS and GARWOOD, Circuit Judges.

GOLDBERG, Circuit Judge:

## PROLOGUE

In this appeal of an employment discrimination dispute we are the audience for a real life radio drama produced and directed by defendant-appellant Michael P. Petrizzo. The action is set in Houston, Texas, at the offices of defendant-appellant KCOH, Inc. ("KCOH"), the black-oriented radio station where Petrizzo is executive vice president and general manager. In the leading role of the discharged employee is plaintiff-appellee Clarence Chaline, Jr., the former production manager at KCOH. Chaline, a white male, brought this action to challenge the allegedly racially discriminatory employment practices at KCOH. The district court held that Chaline was discharged from his position because of his race, and ordered that he be awarded back pay and reinstated as production manager. KCOH and Petrizzo now appeal to this court. We affirm.

## ACT I: ON THE RADIO

For twenty-eight years radio station KCOH has broadcast black-oriented programming to listeners in the Houston area. The KCOH format mixes rhythm and blues or soul music with "rap" time during which the disc jockey communicates with the listening audience. The disc jockey's "rap" is characterized by the idiom and voice quality popular with the station's primarily black audience. KCOH has never had a white disc jockey.

Appellee Chaline was hired as production manager at KCOH in 1979 at a salary of $1200 per month.[1] As production manager, Chaline was responsible for preparing commercial advertisements and community service announcements for air play. His job entailed writing and recording commercials as well as coordinating their broadcast. Chaline never served as a KCOH disc jockey during his tenure at the station.

In late 1979, KCOH faced decreasing ratings and a low volume of billings. In order to reduce costs, appellant Petrizzo decided to make the station's production manager a permanent part-time disc jockey as well. Instead of casting Chaline in this newly created dual role, however, Petrizzo asked Chaline to make a lateral move into the station's sales department. Chaline objected to the proposed transfer, because it involved a decrease in salary and because his wardrobe and transportation were inadequate for sales work, and asked to be retained as production manager and part-time disc jockey. Upon Chaline's refusal to

---

1. While Chaline also served as production manager at KCOH for several months in 1968, that period of employment is not material to the case.

move into sales, his employment was terminated. Exit Chaline, stage left.

Prior to Chaline's termination, Don Samuels, a black male, had auditioned for the part of production manager and part-time disc jockey. Samuels was well-known in the Houston area as a disc jockey at radio station KYOK, where he also performed production work. Petrizzo eventually hired Samuels to replace Chaline at a salary of $1200 per month.

## ACT II: IN THE DISTRICT COURT

Chaline brought this action in the United States District Court for the Southern District of Texas under the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1976).[2] Following a bench trial, the district court found that Chaline was well qualified to be a KCOH disc jockey based upon his experience and demonstrated ability, and that Don Samuels was not more qualified than Chaline to fill the dual position of production manager and part-time disc jockey. Accordingly, the court concluded that Chaline's employment was terminated because he was white. In response to the appellants' suggestion that Chaline lacked the black "voice" and the sensitivity to black listening tastes necessary for the job, the court determined that this asserted justification for Chaline's termination was merely pretextual. Based on these findings, the court awarded Chaline back pay of $6000 and reinstatement as production manager. KCOH and Petrizzo appeal from the judgment in favor of Chaline.

## INTERMISSION: ISSUES ON APPEAL

The district court held that Chaline proved by a preponderance of the evidence that he was the victim of purposeful racial discrimination at KCOH. The appellants, KCOH and Petrizzo, attack this conclusion on two basic grounds. First, they assert that Chaline failed to establish a prima facie case of racial discrimination because he was not qualified for the position as part-time disc jockey. Second, they contend that legitimate, nondiscriminatory business reasons prompted Chaline's dismissal. We now turn to an appraisal of these arguments.

## ACT III: THE APPEAL

### Scene 1—Order of Proof

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court established the basic allocation of burdens and order of presentation of proof to be used in cases alleging discriminatory treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e–17 (1976). The elements of a case of racial discrimination as articulated in *McDonnell Douglas* and *Burdine* apply to cases brought under section 1981 as well. *See Crawford v. Western Electric Co.,* 614 F.2d 1300, 1315 (5th Cir.1980). The plaintiff initially has the burden of showing a prima facie case of discrimination. If the plaintiff succeeds in raising a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 93 S.Ct. at 1824. Should the defendant carry this burden, the plaintiff then must establish by a preponderance of the evidence that the reasons offered by the defendant were merely a pretext for discrimination. *Burdine,* 101 S.Ct. at 1093. This formulation is simply a division of intermediate evidentiary burdens; "[t]he ultimate burden of persuading

---

**2.** 42 U.S.C. § 1981 (1976) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. Section 1981 protects white persons from racial discrimination in private employment. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 2582, 49 L.Ed.2d 493 (1976).

the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff." *Id.* These are the principles that must guide us in determining whether Chaline has proved a case of purposeful racial discrimination.

### Scene 2—Standard of Review

■ Before we examine the findings of the district court in light of the teachings of *McDonnell Douglas* and *Burdine,* we pause to emphasize the narrow scope of our review. Until recently, the Fifth Circuit standard of review in employment discrimination cases called for an independent determination of the ultimate fact issue of discrimination by the reviewing court, although the district court's findings of subsidiary facts that were not clearly erroneous were binding upon it. *See, e.g., Jackson v. City of Killeen,* 654 F.2d 1181, 1184 (5th Cir.1981); *Danner v. United States Civil Service Commission,* 635 F.2d 427, 430 (5th Cir.1981); *East v. Romine, Inc.,* 518 F.2d 332, 338–39 (5th Cir.1975). The United States Supreme Court repudiated the Fifth Circuit rule in *Pullman-Standard v. Swint,* —— U.S. ——, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), holding that a court of appeals may reverse a district court's finding with respect to discriminatory intent only if the appellate court concludes that the finding is clearly erroneous under Fed.R.Civ.P. 52(a). *Id.* at ——, 102 S.Ct. at 1791.[3] Accordingly, our inquiry on this appeal is limited to the question of whether the district court was clearly erroneous in finding that KCOH purposefully discriminated against Chaline on account of his race. Having thus framed the issue, we must now examine the facts to determine its resolution.

### Scene 3—Examining the Findings

#### a. Prima Facie Case

■ Under *McDonnell Douglas* and *Burdine,* the initial question is whether the plaintiff has established a prima facie case of racial discrimination. "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine,* 101 S.Ct. at 1094. The plaintiff may discharge the burden by showing: (1) that he belongs to a protected class; (2) that he was qualified for a particular position; (3) that, despite his qualifications, he was rejected or discharged; and (4) that he was replaced by a nonminority. *See Burdine,* 101 S.Ct. at 1094; *McDonnell Douglas,* 93 S.Ct. at 1824; *Jackson v. City of Killeen,* 654 F.2d 1181, 1183 (5th Cir.1981). The prima facie case serves an important function in the litigation by eliminating the most common nondiscriminatory reasons for the plaintiff's discharge or rejection. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 1866 n.44, 52 L.Ed.2d 396 (1977). By establishing the prima facie case, the plaintiff raises the presumption that the employer unlawfully discriminated against the employee. *Burdine,* 101 S.Ct. at 1094.

■ The district court in this case determined that Chaline fulfilled all four of the *McDonnell Douglas* requirements. In particular, the court found that Chaline, a white male, was well qualified to be a KCOH disc jockey based upon his twenty years' experience in radio and his demonstrated ability. The court further found

**3.** *See also Rogers v. Herman Lodge,* —— U.S. ——, 102 S.Ct. 3272, 3278, 73 L.Ed.2d 1012 (1982) (clearly erroneous standard applies to trial court's finding that at-large voting system was maintained for discriminatory purposes). Already the Fifth Circuit offspring of *Pullman-Standard* abound. *See, e.g., Lerma v. Bolger,* 689 F.2d 589 (5th Cir.1982) (citing *Pullman-Standard*); *Harrell v. Northern Elec. Co.,* 679 F.2d 31 (5th Cir.1982) (judgment modified on petition for rehearing in light of *Pullman-Standard*); *Terrell v. United States Pipe & Foundry Co.,* 644 F.2d 1112 (5th Cir.1981), *vacated,* —— U.S. ——, 102 S.Ct. 2229, 72 L.Ed.2d 841 (1982) (vacated and remanded for further consideration in light of *Pullman-Standard*); *United States v. Georgia Power Co.,* 634 F.2d 929 (5th Cir.1981), *vacated,* —— U.S. ——, 102 S.Ct. 2026, 72 L.Ed.2d 477 (1982) (same). This change in the standard of review can be outcome determinative. *See Robbins v. White-Wilson Medical Clinic, Inc.,* 660 F.2d 1064 (5th Cir.1981), *vacated,* —— U.S. ——, 102 S.Ct. 2229, 72 L.Ed.2d 842, *on remand,* 682 F.2d 503 (5th Cir.1982) (first opinion reversed district court based on independent determination of fact of discrimination; second opinion affirmed district court using clearly erroneous standard).

that Samuels, the black male who replaced Chaline, was not more qualified than Chaline to fill the dual position of production manager and part-time disc jockey. The court concluded from these findings that Chaline had established a prima facie case of purposeful racial discrimination.

We are not prepared to say that these findings are clearly erroneous. The record indicates that Chaline has been active in the radio industry in Houston since 1961. His experience has included work at eight different radio stations and in many capacities: disc jockey, general manager, operations manager, production manager, news director, and news editor. Chaline has also taught broadcasting. Samuels has worked for seven years at another Houston radio station. While he has served primarily as a disc jockey, he also has performed some production work. Our review of the record indicates that the trial court was not clearly erroneous when it concluded that Chaline and Samuels were equally well qualified for the KCOH position. Consequently, we must affirm the court's finding that Chaline established a prima facie case of racial discrimination at KCOH.

### b. Employers' Rebuttal

■ Having found that Chaline carried his initial burden, we now move to the second stage of the *McDonnell Douglas-Burdine* order of proof. At this juncture the employer must set forth a legally sufficient explanation for the discharge of the aggrieved employee in order to rebut the prima facie showing. The employer must raise a genuine issue of fact as to whether it discriminated against the plaintiff. *Burdine,* 101 S.Ct. at 1094.

KCOH and Petrizzo seek to justify Chaline's termination on the grounds that he does not have the proper "voice" to serve as a disc jockey on a black-oriented radio station. Additionally, the appellants claim that Chaline is not sensitive to the listening tastes of a black audience. The district court apparently found these arguments a sufficiently clear and specific rebuttal to require the plaintiff to move forward with

his case. For purposes of disposing of this case, we too will assume the legitimacy of this asserted job qualification. We are not here to judge whether a characteristic black "voice" or idiom in truth exists; such a determination we leave to those far more schooled than we in linguistics, lexicography, and anthropological idioms. We note in passing, however, that such a subjective job qualification provides a "ready mechanism for racial discrimination." *Johnson v. Uncle Ben's, Inc.,* 628 F.2d 419, 426 (5th Cir.1980). The more subjective the qualification sought and the more subjective its measurement, the more difficult it will be for the employer to satisfy *Burdine's* requirement that the legitimate reasons for the discharge be "clear and reasonably specific." *Burdine,* 101 S.Ct. at 1096.

### c. Pretext

■ Assuming, then, that KCOH and Petrizzo have presented a question of fact concerning the decision to discharge Chaline, *McDonnell Douglas* and *Burdine* require Chaline to demonstrate that the proffered reason was pretextual. Chaline must prove by a preponderance of the evidence that the asserted justifications advanced by KCOH and Petrizzo were not the true reasons for his discharge. *Burdine,* 101 S.Ct. at 1089; *McDonnell Douglas,* 93 S.Ct. at 1825. This burden merges with Chaline's ultimate burden of persuasion that he was the victim of intentional discrimination. Chaline may successfully discharge this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 101 S.Ct. at 1095.

In this case, Chaline's evidence persuaded the trial court that KCOH and Petrizzo were masking intentional racial discrimination when they raised objections to Chaline's voice quality and sensitivity to black listening tastes. Specifically, the court noted that Chaline's idiom and voice quality were sufficiently similar to those of black audience disc jockeys that such an excuse

was a mere pretext. The court additionally found that the assertion that Chaline was insensitive to black radio listeners was unpersuasive in light of his prior experience and duties at KCOH. Accordingly, the court determined that Chaline had proved by a preponderance of the evidence that he was discharged because of his race.

When examined under the appropriate "clearly erroneous" standard, the district court's findings must be affirmed. Chaline testified that on occasion he used a black voice in preparing commercial spots for broadcast; the record reflects that he demonstrated his mastery of the voice and idiom during the course of trial. Furthermore, Chaline's performance in scripting and recording commercials, which the appellees conceded was satisfactory at all times, indicates an awareness of the tastes and preferences of the KCOH listening audience. We therefore cannot find that the district court was clearly erroneous in determining that Chaline proved the proffered reasons for his discharge were pretextual.

### EPILOGUE

Under the highly individualized facts of this case, the district court found that Chaline had proved by a preponderance of the evidence that his discharge from radio station KCOH was the result of purposeful racial discrimination. The accents of *McDonnell Douglas, Burdine,* and *Pullman-Standard* highlight the basic idiom that this court should enunciate. Because our review of the record indicates that the district court was not clearly erroneous in its determinations, we must affirm.

AFFIRMED.