**Robert E. JACOBS**

v.

**William F. BOLGER.**

**Civ. A. No. 81–0798.**

United States District Court,
W.D. Louisiana,
Monroe Division.

June 8, 1984.

Willie Hunter, Jr., Monroe, La., S.P. Davis, Shreveport, La., for plaintiff.

Joseph S. Cage, U.S. Atty., John Halliburton, Asst. U.S. Atty., Shreveport, La., John Oldenburg, Asst. Regional Labor Counsel, Memphis, Tenn., Wyneva Johnson, Washington, D.C., for defendant.

**RULING**

NAUMAN S. SCOTT, District Judge.

Plaintiff, Robert E. Jacobs (Jacobs), a black male, was appointed as a clerk at the Monroe, Louisiana U.S. Post Office (Post Office) on March 7, 1974. Prior to his employment, plaintiff was convicted of misdemeanor theft and, for this reason, his application for employment had been initially rejected. However, after consulting an Equal Employment Opportunity Commission (EEOC) advisor, the Post Office hired Jacobs despite his prior conviction.

Problems with respect to Jacobs' poor work attendance arose almost immediately. In 1974 and early 1975, Jacobs was counselled by his supervisor about his excessive tardiness and sick-leave usage. Neverthe-

less, Jacobs continued to frequently absent himself from his workplace. His work record for February 1976 thru February 1977 was tarnished by so many sick-leave absences that the Post Office, in a letter restricting his use of future sick-leave, required that he substantiate all of his future sick-leave absences with acceptable medical evidence. (Joint Exhibit 79–80).

In addition to his many sick-leave absences, Jacobs was often tardy in reporting for work and recurrently late in returning from excused absences. He had been given an informal discussion on September 15, 1976 and a disciplinary counselling on February 26, 1977 about his repeated lateness and the subsequent hardship his behavior created for the Post Office. However, Jacobs did not take the warnings very much to heart. On March 19, 1977, after Jacobs failed to report to work as scheduled, he received a stern warning letter from the Post Office detailing no less than sixteen previous unscheduled absences. (Joint Exhibit 77–78).

After a six-month respite during which Jacobs' attendance improved and his sick-leave restriction was lifted, Jacobs returned to his earlier pattern of excessive absenteeism. (Joint Exhibit 76). He was again placed on restricted sick-leave by letter dated May 31, 1978. (Joint Exhibit 74–75). Because Jacobs' attendance continued to be a problem, on November 10, 1978 he was informed by Grady McQuiston (McQuiston), Manager of Mail Processing at the Monroe Post Office, that further disciplinary action would be taken if Jacobs did not rectify his attendance problems.

However, Jacobs' attendance did not improve. (Joint Exhibit 83–84). The Post Office responded by sending him two warning letters. (Joint Exhibit 72–73, 70–71).

The Post Office also held a discussion with Jacobs, informing him that serious steps would be taken if his attendance continued to be unsatisfactory. Subsequent to this warning, Jacobs' record shows eight unscheduled absences for sick-leave and five instances where Jacobs was absent without leave, one of which lasted two and one-half days. (Joint Exhibit 57–60). On November 13, 1979, the Post Office sent Jacobs a letter proposing that he be removed from the Post Office. (*Id.*)

Jacobs was informed by letter dated December 3, 1979, that his employment would be terminated at the close of business on December 20, 1979. After his termination, plaintiff brought this action against his former employer, seeking job reinstatement, back pay and other benefits and damages, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1] (Plaintiff's Complaint, p. 4). This case was tried before us without a jury.

Plaintiff's claim of racial discrimination must fail, for the record is barren of any suggestion, much less proof, that any racial animus motivated his discharge. On the contrary, the record is replete with evidence of poor job performance which justifies the decision to terminate his employment without reference to his race. Specifically, the testimony of McQuiston and Walter Flanagan,[2] which we find to be entirely credible, established that the stated reason for discharging Jacobs—his inordinate tardiness and undependable work record—were not, as Jacobs claims, mere pretexts. Jacobs' contention that he was fired in retaliation for filing complaints with the EEOC is not supported by any credible evidence. In sum, the facts addressed at trial convince us that Jacobs' employment was terminated solely because

---

1. Plaintiff's complaint was also based on 42 U.S.C. § 1981 and on the First, Fifth, Eighth and Fourteenth Amendments to the Constitution. We ruled on October 12, 1981 that Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment. We also held that plaintiff's Title VII action, insofar as it sought compensatory or punitive damages, could not be maintained.

2. Walter Flanagan is a Regional Labor Relations Specialist of the U.S. Postal Service in Atlanta, Georgia. At the time of Jacobs' termination, he was Director of Employee and Labor Relations at the Shreveport, Louisiana Sectional Center.

he was an unreliable and incompetent employee, and not for any reason prohibited by Title VII.

■ In reaching this conclusion, we are not unmindful of the fact that racial discrimination is often a subtle process. *See Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 86 (5th Cir.1982), and cases cited therein. However, Jacobs has completely failed even to prove a prima facie case under the relaxed standards of *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Lerma v. Bolger*, 689 F.2d 589, 591–592 (5th Cir.1982). Under the law of this circuit, a Title VII plaintiff fails to make out a prima facie case unless he establishes: (1) that he belongs to a protected class; (2) that he was qualified for a particular position; (3) that, despite his qualifications, he was discharged; and (4) that he was replaced by a nonminority. *Id. See also Chaline v. KCOH, Inc.*, 693 F.2d 477, 480 (5th Cir.1982); *Jackson v. City of Killeen*, 654 F.2d 1181, 1183 (5th Cir.1981); *Marks v. Prattco, Inc.*, 607 F.2d 1153, 1155 (5th Cir.1979).

As noted previously, the evidence here forecloses any claim that Jacobs was "qualified." In light of his prior misdemeanor theft conviction, it is doubtful that Jacobs was strictly "qualified" for the job when he was hired in 1974. In any event, Jacobs' employment record, which includes an extraordinary amount of unauthorized absences and unscheduled sick-leaves, leads inexorably to the conclusion that by December 3, 1979, Jacobs had proven himself unfit for his position as a Postal employee. Jacobs' termination was justified by ample good cause and, in the absence of any credible evidence from which a racial motivation can be inferred, it will not be disturbed by this court.

Accordingly, plaintiffs' complaint against the defendant is hereby dismissed in its entirety.