Gloria C. RISHER, Plaintiff–Appellant,

v.

Edward C. "Pete" ALDRIDGE, Jr.,
Secretary of the Air Force,
Defendant–Appellee.

No. 88–1504.

United States Court of Appeals,
Fifth Circuit.

Dec. 5, 1989.

Humberto G. Garcia, Weir & Alvarado, San Antonio, Tex., for plaintiff-appellant.

John F. Paniszcazyn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for defendant-appellee.

Before GARWOOD, JONES, and SMITH, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Gloria C. Risher (Risher) appeals from the district court's dismissal of her Title VII sex discrimination case with prejudice. *See* 42 U.S.C. § 2000e, *et seq.* Risher filed suit against defendant-appellee Edward C. "Pete" Aldridge, Jr., Secretary of the Air Force (the Air Force) for alleged sex discrimination by her superior in promotion decisions at Laughlin Air Force Base in Del Rio, Texas. The lower court determined, after a two-day bench trial, that Risher had failed to prove that her superior's decisions not to promote her

were motivated by sex-based discrimination. After her case was dismissed, Risher filed a motion for new trial, asserting that her superior had failed totally to consider certain "objective" criteria when making the promotion decisions. Use of objective criteria is required by the Air Force Personnel Manual and the Civil Service Reform Act, 5 U.S.C. § 4302 (West Supp. 1989). The district court denied Risher's motion and Risher timely appealed.

### Facts and Proceedings Below

Risher was a civilian employed with the Laughlin Air Force Base's (the Base) contracting division as a procurement agent at the GS–7 level. Risher began working at the Base in 1966 as a clerk-typist (GS–2), and had been in her current position at the GS–7 level since 1979. Risher was primarily responsible for purchasing supplies for the Base. On June 6, 1983, a supervisory contract specialist position became vacant. Sandy Alvarado, a female, had occupied that position since 1981.[1] Alvarado was Risher's immediate supervisor during 1981 to 1983.

Lieutenant Danny Bobbitt (Bobbitt), the Chief Base Contracting Officer, was responsible for filling the vacancy left by Alvarado.[2] Risher and a male employee, Ralph Mendez (GS–7), were certified as eligible to fill the supervisory position pursuant to a certificate of promotion issued by the Base's civilian personnel office on July 18, 1983.[3] Bobbitt desired a broader range of applicants and he therefore requested a central skills bank search to locate qualified civil service personnel working outside of the Base. On July 26, 1983, two certificates of promotion were issued by the Base personnel office, one listing Mendez and Risher as the Base's qualified applicants, and another listing four applicants, two females and two males, who were located outside the Base. Bobbitt interviewed Risher and Mendez, but decided to offer the position to Benton Jordan (GS–9), one of the outside applicants he had interviewed.[4] Jordan declined the position for personal reasons. On September 6, 1983, another certificate of promotion was issued listing Mendez and Risher and an outside applicant, John Thornton (GS–9). Thornton had had considerable supervisory contract experience. Bobbitt interviewed all three

1. Alvarado left the position for a comparable position in the private sector. Alvarado left her position in good standing and of her own free choice.

2. There were three tiers of military management in the contracting division at the Base. At the first level was the Executive NCO (noncommissioned officer), who was Raul Rodriguez for the relevant time period. Above the Executive NCO was the Deputy Base Contracting Officer and at the next higher level was the Chief Base Contracting Officer (Bobbitt). In addition, there were civilian supervisors, like Alvarado, acting as branch chiefs or supervisors. Rodriguez was not technically Alvarado's supervisor, but he did serve as a liaison or link between Alvarado and Bobbitt. Rodriguez, like Alvarado, had the opportunity to directly supervise Risher during the time he temporarily assumed Alvarado's duties after Alvarado left in 1983.

3. Janet Branch, an employee with the personnel division of the Base, explained the promotion process. The civilian personnel office has an automated system that retains each employee's personnel records. The records encode relevant employee experience, education, and training information. When a vacancy occurs, the personnel office works with the selecting supervisor to establish a promotion evaluation plan, which sets forth the criteria for the vacant position. The plan is entered into the system and is matched against employees who have coded into their records the requisite skills, knowledge, education, and experience. The certificate of promotion then lists the employees who satisfy the criteria. The promotion certificate is issued to the hiring officer along with a placement brief, which summarizes the information in the listed employees' personnel files. The placement brief contains the most recent written performance appraisal. The hiring supervisor is then supposed to interview the eligible candidates and make a selection from those candidates. As happened in the instant case, the hiring supervisor can request a broader search to locate eligible applicants who work outside the Base.

4. It is unclear what Jordan's qualifications were in comparison to Risher's qualifications. However, Bobbitt never stated that he chose Jordan and Thornton because he felt they were better qualified. He only stated that he did not promote Risher because of negative recommendations by her supervisors, Alvarado and Rodriguez. The district court properly focused on Bobbitt's articulated reasons for failing to promote Risher.

applicants and offered the position to Thornton. Thornton declined the offer, however, because his current employer had promoted him to the GS–11 level.

On January 20, 1984, after Bobbitt returned from an officers' training school, two more certificates of promotion were issued—one dealing with the GS–9 vacancy left by Alvarado and another one dealing with a vacancy for a GS–9 supervisory contract administrator. In addition to Mendez and Risher, another female employee working on the Base, Maria Celedon, was listed as eligible for the positions. Bobbitt interviewed all three applicants for the latter position and decided not to hire any of them.[5] None of the three were interviewed, or reinterviewed, for the position vacated by Alvarado because Bobbitt was initiating procedures to have that position converted from civilian to military status. Shortly thereafter, in June 1984, Bobbitt was reassigned to another location and Captain Johnson assumed Bobbitt's duties at the Base.

Johnson received a certificate of promotion to fill the vacancy left by Alvarado in October 1984. Mendez, Risher, and Celedon were again listed as eligible for promotion, but Johnson decided to delay filling the position because an investigation was underway regarding alleged misrepresentations by Risher in the performance of her job.[6] Risher successfully defended against the charges and, in March 1987, Risher transferred to Goodfellow Air Force Base in San Angelo, Texas. She currently works at Goodfellow Air Force Base as a contract administrator at the GS–9 level.

The position vacated by Alvarado remained vacant until approximately February 10, 1986, when Johnson selected Jerry Carter, a male, to fill the position. The position is currently, or at least was as of the time of trial, occupied by Juanita Vasquez, a female who was Risher's former co-worker. It is undisputed that Risher was never offered the position. During the two to three years that the position remained officially vacant, several military personnel, including Raul Rodriguez, temporarily assumed the duties of that position.

On March 13, 1985, shortly after receiving the notice to remove, Risher filed an informal discrimination complaint with the Equal Employment Opportunity office at the Base.[7] She filed a formal complaint on May 29, 1985. The Air Force failed to issue a final decision on Risher's complaint within 180 days of her formal filing date. Thus, pursuant to Title VII, 42 U.S.C. § 2000e–16(c), Risher timely filed suit in federal district court on February 2, 1987.

Risher alleged three instances of discrimination in her district court complaint: the decisions by Bobbitt to offer the position vacated by Alvarado to Jordan and Thornton, and the delay in filling the position by both Bobbitt and Johnson. The lower court found that Risher had failed to state a *prima facie* case as to the third allegation because she failed to demonstrate that the treatment accorded to her was different

5. In a memo to the personnel office, Bobbitt stated that he was not selecting any of the three candidates for the following reasons: none had done well on their interview, none of their supervisors would recommend them for the position, and the quality and quantity of work in their current positions was not indicative of that expected from a supervisor.

Although these reasons were given in relation to the contract administrator position and not specifically in relation to the position vacated by Alvarado, they do reflect an overall, general concern that Bobbitt had with respect to these candidates' ability to perform supervisory work.

6. Captain Johnson initiated the investigation with the Air Force Office of Special Investigation (OSI) sometime in 1984. The OSI issued a report of investigation concerning its inquiry

into the allegations made against Risher. The allegations involved included assertions of deliberate misrepresentations made by Risher on certain procurement orders. On March 4, 1985, the Air Force issued Risher a proposed notice to remove Risher from employment. Risher successfully appealed the proposed removal through a grievance and arbitration procedure. On September 25, 1986, a criminal complaint was filed against Risher. However, on October 13, 1986, the criminal complaint was dismissed on the United States Attorney's motion.

7. Risher's complaint with the EEOC office alleged both race and sex discrimination; however, race discrimination was not raised before the district court. Accordingly, we do not consider that basis for discrimination on appeal.

from that received by similarly situated employees outside of her protected class. Mendez, a male employee at the Base, had also been listed on the certificates of promotion, and it is undisputed that he did not receive a promotion. Risher presented no evidence that she was not similarly situated to Mendez.

The lower court concluded that Risher had failed to prove that Bobbitt's decisions to offer the position to Jordan and Thornton were motivated by improper discriminatory reasons. In particular, the court noted that Bobbitt articulated two legitimate nondiscriminatory reasons for not promoting Risher: (1) the negative personal recommendations given by two of Risher's immediate supervisors (Alvarado and Rodriguez); and (2) an incident that raised doubts about Risher's integrity.[8] The court felt that Risher had failed to prove that these reasons were mere pretext and thus Risher failed to carry her burden of proof. The lower court then dismissed her case with prejudice.

Risher filed motion for new trial, which alleged that the district court erred in finding that Bobbitt had articulated legitimate nondiscriminatory reasons for his failure to promote her because such reasons were entirely subjective and the Air Force Personnel Manual and the Civil Service Reform Act, 5 U.S.C. § 4302, require Air Force personnel to use objective criteria in their promotion decisions. The lower court denied Risher's motion for new trial, stating that the failure to follow procedures argument was not timely raised and, even if it had been timely raised, it would not alter the court's earlier decision. Risher filed a timely notice of appeal.

### Discussion

Risher asserts that Bobbitt failed to follow Air Force rules in making his promotion decisions because he totally relied on subjective criteria, rather than considering Risher's objective written performance appraisals. Risher argues that such a fact is fatal to the Air Force's claim that Bobbitt possessed legitimate nondiscriminatory reasons for failing to promote Risher. In other words, Risher argues that Bobbitt's failure to consider the written performance appraisals by Alvarado and Rodriguez, which were directly contradictory to their negative verbal recommendations, demonstrated that Bobbitt's articulated legitimate nondiscriminatory reasons were merely pretext. Thus, the district court erred in finding that Risher failed to prove that Bobbitt's promotion decisions discriminated against her on the basis of sex.[9]

■ We note at the outset that Risher only expressly raised the failure to follow procedures argument at the time of her motion for new trial.[10] This Court does not look with favor upon tardy arguments that are brought to the lower court's attention post-trial after counsel has had the opportunity to salvage what she may from the record. *See, e.g., Commercial Standard Ins. Co. v. Bryce St. Apts., Ltd.,* 703 F.2d

---

**8.** According to Rodriguez, he had originally given Risher a "fully successful" rating on her 1982–83 written performance appraisal. However, the rating that finally appeared on the appraisal was an "excellent." Rodriguez claimed that Risher came to him and said, "Sergeant Rodriguez, I have discussed my evaluation with Captain Bobbitt, and he has instructed me to change these, and for you to sign it."

Rodriguez stated that he signed it without consulting Bobbitt as to the truth of Risher's assertions because he had just returned from vacation and the appraisal was already late. When Rodriguez discussed the incident with Bobbitt a few days later, Bobbitt denied giving Risher any such instructions and instead told Rodriguez that he had directed Risher to discuss the evaluation with Rodriguez to see if Rodriguez would agree to change the rating. Al-

though it is not entirely clear from the record, it appears that the incident occurred in August 1983, after Bobbitt's decision to hire Jordan but before the decision to hire Thornton; thus, it could only have been a factor in the latter decision.

**9.** Risher does not raise a procedural deprivation claim independent of her sex-based discrimination claim, but rather claims that Bobbitt's failure to follow the guidelines rendered his "legitimate" nondiscriminatory reasons for not promoting Risher mere pretext.

**10.** It is true, as Risher points out, that Janet Branch testified at trial that the Air Force Personnel Manual and the Civil Service Reform Act require that written appraisals of performance be used in promotion determinations.

904, 908 (5th Cir.1983) (stating that counsel cannot scan record for new theories to rise on appeal); *Cunningham v. Healthco, Inc.*, 824 F.2d 1448 (5th Cir.1987) ("defenses not raised at trial are ordinarily waived by the parties failing to raise them"). In the instant case, however, the lower court, in its denial of Risher's motion for new trial, did address the merits of Risher's failure to follow rules argument and concluded that such an argument would not affect its earlier decision. As we find no error in the latter determination by the district court, we do not need to address the waiver issue.

■ The Supreme Court has articulated clear principles for lower courts to follow in deciding Title VII discrimination cases. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403, (1983); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[11] The district court concluded, after considering all the evidence, that Risher had failed to prove that Bobbitt had discriminated against her on the basis of sex. *See Aikens*, 103 S.Ct. at 1481–82. The lower court also stated in its denial of Risher's motion for new trial that the fact that Bobbitt had disregarded Air Force rules would not alter its decision. We review the validity of the lower court's findings of intentional discrimination, or the absence thereof, under the clearly erro-

neous standard pursuant to Fed.R.Civ.P. 52(a). *See, e.g., Pullman–Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Trevino v. Holly Sugar Corp.*, 811 F.2d 896, 902 (5th Cir.1987).

■ Bobbitt stated in his deposition that two factors influenced his decision not to promote Risher: (1) the negative recommendations of Alvarado and Rodriguez, two of her immediate supervisors; and (2) an instance where Risher allegedly encouraged a falsification of one of her performance appraisals. As noted earlier, the first of these reasons was the pivotal factor in Bobbitt's decisions.[12] When asked about the substance of the supervisors' negative recommendations, Bobbitt recalled that the supervisors complained, among other things, of an excessive error rate.[13] However, Risher's written performance appraisals, by the same supervisors, did not reflect any problem with error rates—to the contrary, all of Risher's written appraisals were quite favorable. Bobbitt stated that he did not rely at all on the written performance appraisals in making his promotion decisions because he felt that the written appraisals at the Base generally were inflated and an unreliable indicator of an individual's true work record or potential. He denied that his decisions were influenced by Risher's sex.

■ Risher claims that Bobbitt's failure to consider the written appraisals violated the Air Force Personnel Manual and the Civil Service Reform Act.[14] *See* 5 U.S.C.

---

**11.** Risher must and did demonstrate to the lower court that (1) she is a member of a protected class; (2) she applied for an open job or promotion for which she was qualified; (3) she was rejected for that position; and (4) the employer promoted or hired a nonminority for the job or continued to seek nonminority applicants for the position applied for by Risher. *See McDonnell Douglas*, 93 S.Ct. at 1824. Once Risher established her *prima facie* case, the Air Force rebutted that case by presenting evidence that Bobbitt's decision not to promote Risher was based on nondiscriminatory grounds. *See Burdine*, 101 S.Ct. at 1094–95; *Page v. United States Industries*, 726 F.2d 1038, 1055 (5th Cir.1984). Risher then had the opportunity to show that Bobbitt's articulated reasons were pretextual. *Burdine*, 101 S.Ct. at 1094–95; *Page*, 726 F.2d at 1055.

**12.** *See* footnote 8, *supra*.

**13.** Although Bobbitt stated that there were other factors the supervisors mentioned, he could not specifically recall what these factors were at the time of his deposition.

**14.** The Civil Service Reform Act states in pertinent part:

"**§ 4302. Establishment of performance appraisal systems**

"(a) Each agency shall develop one or more performance appraisal systems which—

"(1) provide for periodic appraisals of job performance of employees;

"(2) encourage employee participation in establishing performance standards; and

"(3) *use the results of performance appraisals as a basis for* training, rewarding, reassign-

§ 4302 (West Supp.1989). Risher concludes from this alleged violation that the lower court erred in finding that Bobbitt's nondiscriminatory reasons for not promoting her were legitimate. However, it is not at all clear from the rules themselves, or the testimony given at trial, that Bobbitt even violated the rules. The promotion process involves two stages—the first stage is done entirely by the Base's personnel office which, upon completion of that stage, issues a certificate of promotion to the hiring supervisor listing the eligible candidates. The hiring supervisor then interviews the listed applicants and makes his decision. Janet Branch, who worked in the personnel office at the Base, testified that the appraisals were used as a "sort factor," but no further explanation was elicited. It is unclear who is to use the performance appraisals, how they are to be used, and at what stage or stages of the process they are to be used. However, it is clear, and Risher does not dispute the fact, that the appraisals are not the sole criteria utilized in promoting employees to supervisory positions. Subjective criteria necessarily and legitimately enter into personnel decisions involving supervisory positions. *See, e.g., Lerma v. Bolger,* 689 F.2d 589, 592 (5th Cir.1982). There is no evidence as to how subjective versus objective criteria are weighed or should be weighed in an Air Force personnel decision to promote an employee to a supervisory position.

■ Moreover, and more importantly, even if Bobbitt did erroneously fail to "use" the objective appraisals in his pro-

motion decisions, there was absolutely no evidence presented that he did so in a sexually discriminating manner. There was simply no evidence that Bobbitt considered Jordan's and Thornton's written performance appraisals in deciding to offer them the position, while he disregarded Risher's written appraisals in favor of subjective criteria. As we have stated before, an agency's disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual. *See Sanchez v. Texas Comm'n on Alcoholism,* 660 F.2d 658, 662 (5th Cir.1981) ("The Commission's disregard of its own hiring system does not prove racial discrimination absent a showing that discrimination was a motive in the action taken."). *See also Lerma,* 689 F.2d at 592 ("failures to 'follow the book' " held "not persuasive" where no showing that the failure generally "produced disparate results").

Bobbitt stated that he disregarded the written appraisals because they were inflated.[15] Janet Branch testified that there were "significant problems at [the Base] with rating inflation. At the present time, the rating statistics for [the Base] are the highest of any A.T.C. [Air Training Command] Base." [16] Branch was undoubtedly in a position to observe evaluations from several supervisors over a considerable length of time and from that exposure to form a knowledgeable opinion on whether rating inflation occurred at the Base. There was absolutely no evidence that Bob-

ing, *promoting,* reducing in grade, retaining, and removing *employees.* . . ." 5 U.S.C. § 4302(a) (emphasis added).
The relevant portions of the Air Force Personnel Manual were not included in the record. Federal Personnel Manual, Chapter 335, Subchapter 1–4.

15. Bobbitt's deposition states in relevant part: "Q. If, in fact, Ms. Alvarado was accurate about her concern about Mrs. Risher's errors, would you expect that to show up in her evaluation?
"A. Not necessarily.
"Q. Why not?
"A. Because those things 90 percent of the time aren't accurate.
" . . . .

"Q. Why is that?
"A. They have a tendency to be inflated.
"Q. Why?
"A. I have no idea. Human nature, I guess.
" . . . .
"A. They were friends. She didn't want to give her a bad report."

16. There were approximately twelve to thirteen A.T.C. bases employing several thousand civilian employees. Branch testified that "normally, people [at the Base] are rated above fully successful, when, in fact, a fully successful rating would be more appropriate." Branch also testified that the rating inflation problem had existed at the Base ever since she had arrived there over fifteen years ago.

bitt disregarded Risher's appraisals because she was a female, but nevertheless considered the written appraisals of males. From the evidence, the lower court could reasonably conclude that Bobbitt disregarded all the written appraisals for the reasons he articulated and not for any discriminatory reason.

While it is true that Bobbitt may have reached a more informed decision if he had consulted the appraisal reports and confronted the supervisors with their contradictory written and oral recommendations, a less informed or misinformed decision does not, in itself, trigger liability under Title VII. The ultimate issue is not whether Bobbitt made the best decision, nor whether Bobbitt made the decision we would have made had we been in his place, nor even whether Bobbitt made a sound decision. *See, e.g., Turner v. Texas Instruments*, 555 F.2d 1251, 1257 (5th Cir. 1977) ("Title VII and section 1981 do not protect against unfair business decisions—only against decisions motivated by unlawful animus."); *Garcia v. Gloor*, 618 F.2d 264, 269 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981) ("The EEO Act does not prohibit all arbitrary employment practices. It does not forbid employers to hire only persons born under a certain sign of the zodiac.... It is directed only at specific impermissible bases of dicrimination—race, color, religion, sex, or national origin."); *Wright v. Western Electric Co.*, 664 F.2d 959, 964 (5th Cir.1981) (failure to hire minority due to incorrect low assessment of his capabilities, rather than due to his race, does not violate Title VII); *Cunningham v. Housing Authority of City of Opelousas*, 764 F.2d 1097, 1098, 1100 (5th Cir.1985) (selection of male over better qualified female does not violate Title VII where made solely to repay selected individual for prior political support and not because of sex).

Our inquiry is limited to whether or not the district court clearly erred in finding that Risher failed to prove that Bobbitt discriminated against her on the basis of sex when he offered the position to Jordan and Thornton. *See Aikens*, 103 S.Ct. at 1482; *Cunningham*, 764 F.2d at 1100. There is simply no persuasive evidence—certainly none that is compelling—that Bobbitt discriminated on the basis of sex in his promotion decisions by failing to follow regulations or by any other means.

The evidence clearly shows that Alvarado, a woman, occupied the position prior to Bobbitt's promotion decisions, and that Bobbitt consulted and relied on Alvarado's opinion of Risher. Alvarado had observed Risher's work for two years. Even though there was considerable evidence of a smear campaign by Risher's co-workers and her immediate supervisors,[17] such conduct (and there is no indication that it was motivated by Risher's sex) does not translate into sex-based discrimination by Bobbitt against Risher. No other female employee who testified felt that sex discrimination was a problem at the Base and there was no other indication of sex-based discrimination. To the contrary, the evidence reveals that women have held numerous supervisory positions at the Base both in the past and currently.

The two males who were offered the job were undisputedly as qualified as Risher. It is clear that Risher was technically qualified, but it is also clear that there was strife between Risher and her co-workers. While the real possibility exists that Risher was unjustly victimized by her co-workers and her immediate supervisors, there is no evidence that Bobbitt knew of this (nor is there evidence that any such victimization was because of Risher's sex). Even had Bobbitt known that Risher's reputation was being unjustly attacked (for reasons

---

**17.** Sergeant Shrader stated in her deposition that Alvarado kept track of the procurement agents' errors for a period of time in 1983. When Alvarado was absent from work for approximately a ten-day period, Shrader kept the error log. Shrader testified that she was surprised to see that Alvarado had recorded Risher as having an unusually high number of errors

and Risher's co-worker, Vasquez, as having an unusually low number of errors. When Shrader kept the log, she found no real disparity between the different agent's error rates. In addition, Shrader stated that Risher's errors were brought to the immediate attention of Rodriguez, whereas Alvarado would correct Vasquez's errors herself.

having nothing to do with her sex), such knowledge would not necessarily preclude a nondiscriminatory decision on his part not to promote Risher because of the obviously poor relations she had with co-workers and superiors.

From the record, it appears that the only discrimination that Bobbitt engaged in while making the promotion decisions was to discriminate against Base personnel in favor of applicants from outside the Base. As Risher testified, Bobbitt told her that he wanted to bring in "new blood" to the supervisory position. This motivation, however arbitrary, does not constitute sex-based discrimination in violation of Title VII. *See, e.g., Turner; Gloor; Wright; Cunningham.* In accordance with the above discussion, we conclude that the district court's finding that Risher failed to prove that Bobbitt intentionally discriminated against her on the basis of sex in failing to promote her is not clearly erroneous.

The judgment of the district court is accordingly

AFFIRMED.